Michael C.A. McPHERSON, Plaintiff,

v.

MARYLAND PUBLIC EMPLOYEES COUNCIL 67, et al., Defendants.

Civil No. K–96–1867.

United States District Court, D. Maryland.

Nov. 1, 1996.

James E. McCollum, Jr., College Park, MD, for Plaintiff.

Joel A. Smith, Sarah P. Harlan, and Kahn, Smith & Collins, P.A., Baltimore, MD, for Defendants.

FRANK A. KAUFMAN, Senior District Judge.

In June 1996, plaintiff, Michael C.A. McPherson ("McPherson"), filed a four count complaint against his former employer, Maryland Public Employees Council 67, ("Council 67") and ten individuals for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), breach of contract, promissory estoppel and failure to comply with Maryland's Wage Payment and Collection Law, MD. LABOR AND EMPLOYMENT CODE ANN. § 5–501 *et seq.* The defendants filed a Motion to Dismiss/for Summary Judgment along with supporting materials supplementing the pleadings. Accordingly, as per Federal Rules of Civil Procedure 12(c) and 56, defendants' motion will be treated as one for summary judgment.[1]

## FACTS

Plaintiff Michael McPherson began working for Council 67 (a Maryland organization affiliated with the American Federation of State, County and Municipal Employees International Union, "AFSCME") in or around November 1990. McPherson was the Deputy Executive Director/Administrator of Council 67. Although McPherson claims that he was entitled to benefits available to staff covered under Council 67's collective bargaining agreement, it appears that McPherson himself was not covered by the collective bargaining agreement. (McPherson Decl. at ¶ 16). McPherson's employment ended on or about July 7, 1993.

On June 17, 1996, McPherson filed a complaint against Council 67 and ten individuals (officers and board members of Council 67) seeking a jury trial and claiming that he is owed: accrued leave worth approximately $12,800; an automobile allowance worth approximately $1,050; reimbursement for attorney's fees relating to a separate matter

worth approximately $2,000; severance pay worth approximately $8,300; and health benefits. (*See* Compl. ¶¶ 19–20).

There are four counts in the complaint. Count I is an ERISA claim. Counts II–IV are state claims: Count II—breach of contract; Count III—promissory estoppel; Count IV—a statutory claim for wage payment and collection.

## SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The non-moving party is entitled to have "all reasonable inferences ... drawn in [its] favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987). The non-movants, however, " 'may not rest upon the mere allegations or denials of [their] pleadings' but instead 'must set forth specific facts showing that there is a genuine issue for trial.' " *Felty,* 818 F.2d at 1129 (citing Fed.R.Civ.P. 56(e)). "Genuine issues of material fact cannot be created through mere speculation." *Klebe v. Mitre Group Health Care Plan,* 894 F.Supp. 898, 901 (D.Md.1995) (citing *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)).

## DISCUSSION

For any benefits claimed by McPherson in Count I to be governed by ERISA, there must be an ERISA qualified plan within the meaning of the Act in existence for such benefit. As set forth in 29 U.S.C. § 1002(3), an "employee benefit plan" is defined as either an employee welfare benefit plan, or an employee pension benefit plan, or both. The benefits McPherson claims he is entitled to are more analogous to the first, i.e., an employee welfare benefit plan. An employee welfare benefit plan is defined as

---

1. "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c).

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title . . . .

*Id.* at § 1002(1) (1996 Supp.). Department of Labor regulations further clarify what is and what is not included in an employee welfare benefit plan. *See.* 29 C.F.R. § 2510.3–1(b) (excluding "payroll practices" from the definition). If the Court determines in this case that there is an employee welfare benefit plan for each or any of McPherson's claims, it must also consider whether one or more of Council 67 and the individual defendants is a proper party defendant.

### Accrued Leave

■ McPherson alleges that he is entitled to accrued leave comprised of paid personal leave and paid vacation leave. He contends that Council 67 maintained plans or programs to provide such benefits to its employees. (Plaintiff's Opp. to Mot. for Summ.J. at 9–10). However, Department of Labor regulations consider "payment of compensation while an employee is on vacation" to be a "payroll practice," and not an employee welfare benefit plan, or any part thereof, and thus exclude such payments from ERISA's coverage. 29 C.F.R. § 2510.3–1(b)(3)(i). Moreover, the Supreme Court has held that an "employer's administration of a vacation pay policy from its general assets does not possess the characteristics of a welfare benefit plan" under ERISA. *Massachusetts v. Morash,* 490 U.S. 107, 120–21, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) (noting that "the benefit cannot be transformed into an employee welfare benefit plan under ERISA solely because the employees did not use their vaca-

tion days prior to their formal termination of employment"). Herein, the record discloses that vacation and leave pay is paid out of Council 67's general assets and that Council 67 does not have a separate fund or plan with respect to vacation benefits. (Sachs Aff. at ¶ 7.) Accordingly, this Court concludes that the vacation leave sought by McPherson is not a benefit covered by ERISA. The paid personal leave which is also funded by Council 67's general assets would likewise not be covered by ERISA, applying the same analysis.

### Automobile Allowance

■ As to the automobile allowance, McPherson states that Council 67 maintained a plan or program for the purpose of providing its employees with automobile allowances. (Plaintiff's Opp. to Mot. for Summ.J. at 10.) McPherson argues that his agreement with Council 67 entitled him to an automobile allowance of three hundred, twenty-five dollars ($325.00) per month. (McPherson Decl. at ¶ 17). Defendants counter that while Council 67 has a practice of providing some current employees with automobile allowances, such allowances are paid from the general assets of Council 67 and "[n]o separate fund or plan is maintained by Council 67 with respect to employee car allowances." (Sachs Aff. at ¶ 11). Plaintiff has cited no case which suggests that an employer's practice of paying an automobile allowance constitutes an employee welfare benefit plan or any part thereof. Accordingly, this Court rules that defendants' practice of paying automobile allowances does not constitute an employee welfare benefit plan as defined under ERISA.

### Attorney's Fees

■ McPherson also seeks reimbursement for an advance of attorney's fees associated with the successful defense of an unrelated lawsuit in which McPherson was a defendant. (Compl. ¶ 20). McPherson apparently equates such reimbursement with a plan, fund or program maintained for the purpose of providing its participants with prepaid legal services, as set forth in the definition of employee welfare benefit plan. Defendants

neither agree nor deny that Council 67 maintained a prepaid legal services plan; however, defendants argue that even if Council 67 did have such a plan, the one time reimbursement sought by McPherson would not be covered by such a plan. (Defendant's Reply Mem. in Supp. of Mot. for Summ.J. at 7 n. 5.) Defendant's view is consistent with the Internal Revenue Code's definition of a qualified Group Legal Services Plan (GLSP) as a separate written employer plan which provides persons with specified prepaid legal services, and meets certain Internal Revenue requirements. *See* I.R.C. § 120(b). In light of the above, this Court concludes that herein there was no ERISA qualified plan with respect to these attorney's fees.

*Severance Pay*

 In contrast to the three claims discussed above, severance pay is a benefit clearly covered by ERISA. *See Holland v. Burlington Industries, Inc.,* 772 F.2d 1140 (4th Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). It is listed as a covered benefit in section 186(c) "money or other thing of value paid by any employer to a trust fund established ... for the purpose of ... severance or similar benefits." 29 U.S.C. § 186(c)(6). However, even though severance pay is a benefit recognized by ERISA, it must otherwise meet the definitional elements of an employee welfare benefit plan to create an ERISA obligation on the part of the employer. *See* 29 U.S.C. § 1002(1) ("any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants ... through the purchase of insurance or otherwise ... [severance pay].") "The words 'benefit' and 'plan' are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another." *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). As Justice Brennan indicated in *Fort Halifax,* Congress required, in enacting ERISA, the presence of a "plan," even if there exists a "benefit."

McPherson claims that during his employment he was promised severance pay of $5,000 per month upon termination. (McPherson Decl. at ¶¶ 4, 19). Defendants do not deny this, but state that there was no written agreement so providing. (Sachs Aff. at ¶ 8). Aside from such alleged verbal promise, Council 67 does not appear to have had any plan, fund, or program to provide severance pay to its employees. The Supreme Court has indicated that the statutory requirement of a definite plan is significant because of the administrative measures which having a plan requires. "An employer which makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." *See Fort Halifax,* 482 U.S. at 9, 107 S.Ct. at 2216 (1987). In *Fort Halifax,* the Court evaluated a state statute requiring employers to pay a one-time severance payment to employees in the event of a plant closing and concluded that "a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation;" therefore, it did not constitute an employee welfare benefit plan. *Id.* at 12, 107 S.Ct. at 2217–18. The Fourth Circuit has found a plan relating to severance pay to exist, even where funded out of an employer's general assets, where the severance pay policy was described in an company policy manual and an employee handbook. *See Holland,* 772 F.2d at 1143–44. In the within case, McPherson has not alleged that there is any description of a severance pay policy in any document, and there does not appear to be such a policy even for employees covered by the Council 67 collective bargaining agreement (McPherson, as discussed *supra,* was not so covered). In light of the above, this Court concludes that, even assuming the existence of a promise of severance pay, Council 67 did not have an employee welfare benefit plan so providing. Thus, McPherson has no cognizable ERISA claim for severance pay.

### Health Benefits

McPherson also claims that he is owed three months worth of health benefits. Health benefits, like severance pay, are benefits covered within the definition of an employee welfare benefit plan. *See* 29 U.S.C. § 1002(1)(A) ("any plan, fund, or program ... established ... for the purpose of providing ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness"). However, unlike the claim for severance pay discussed *supra*, with respect to the health care benefits which McPherson seeks, there is an ERISA qualified health benefit plan, i.e., the AFSCME Employees Group Health Insurance Plan "AFSCME Plan." (*See* O'Malley Aff. at ¶ 2.) The AFSCME Plan is independently administered by the International Union, not by Council 67. According to the record in this case, Mr. James O'Malley ("O'Malley") is the Plan Administrator for the AFSCME Plan. (*See* O'Malley Aff. at ¶ 1.) McPherson concedes that there is a Plan Administrator for the AFSCME Plan. (*See* Plaintiff's Opp. to Mot. for Summ.J. at 5).

▮ Where an administrator has been appointed with respect to a plan, the administrator is the proper party defendant, not the employer, "unless the employer has controlled or influenced the administrator's decisions in regard to awarding pension benefits." *Reynolds v. Bethlehem Steel Corp.*, 619 F.Supp. 919, 928 (D.Md.1984). McPherson has not alleged that Council 67 has controlled or influenced O'Malley's decisions, and defendants have stated that "Council 67 does not play any role in the administration of the plan except to remit payment as a participating employer to the International Union and to furnish employees with the necessary paper work." (*See* Sachs Aff. at ¶ 3.) Therefore, it appears to this Court, that with respect to the health benefits claim, McPherson has not filed against the proper party defendant. Moreover, according to Plan Administrator O'Malley, McPherson has never sought these health benefits from the AFSCME Plan itself. (*See* O'Malley Aff. at ¶ 5.) [2] It is up to the AFSCME Plan to determine if any notice of claim McPherson may choose to file now is time barred within the policies of the AFSCME Plan.

Having determined that four of the benefits which McPherson seeks are not part of an ERISA qualified plan and that with respect to the health care benefits, McPherson has not named the proper party defendant, this Court will grant defendants' Motion for Summary Judgment with respect to the ERISA claims.

### State Law Claims

The remaining counts are state law claims. Under the doctrine of supplemental jurisdiction set forth in 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus, this Court appears to have supplemental jurisdiction over the state law claims asserted herein by McPherson. However, Congress provided district courts with several discretionary exceptions to their exercise of supplemental jurisdiction in 28 U.S.C. § 1367(c). At least one such exception appears to apply herein, i.e., where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also, Hardy v. Birmingham Board of Education*, 954 F.2d 1546, 1550 (11th Cir.1992) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). Accordingly, this Court declines herein to exercise

---

**2.** It may, in fact, be too late now for him to seek such benefits. According to the Group Insurance Plan provided to this Court, dated January 1, 1992, "[w]ritten notice of claim must be given ... within 30 days after the occurrence or start of the loss on which claim is based." (*See* O'Malley Aff.Ex. B at 77). However, that issue is not before this Court at this time.

supplemental jurisdiction over the state law claims and hereby dismisses them without prejudice. In so doing, the Court notes section § 1367(d) of the above-discussed statute which provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as . . . the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, McPherson will seemingly be able to refile one or more of his claims in state court, if he acts within the said time limitations, and if he so desires.

## CONCLUSION

This Court will grant the Motion for Summary Judgment with respect to Count I and dismisses without prejudice Counts II–IV in a separate Order of even date herewith.