William F. CECIL, Jr.

v.

AAA MID–ATLANTIC, INC. and AAA Mid–Atlantic, Insurance Agency, Inc.

Civil No. CCB–00–1483.

United States District Court, D. Maryland.

Oct. 17, 2000.

Thomas J. Drechsler, Thomas A Imperiale, Carson, Jones–Bateman & Drechsler, PA, Baltimore, MD, for plaintiff.

Thomas Dowd, Littler Mendelson, Baltimore, MD, for defendant.

### MEMORANDUM

BLAKE, District Judge.

Now pending before this Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. Because both parties have submitted material outside the pleadings, the defendants' motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). Plaintiff William F. Cecil, Jr. was employed by Defendant AAA Mid–Atlantic, Inc. until he accepted early retirement in 1985. He has brought four· claims against AAA Mid–Atlantic and AAA Mid–Atlantic Insurance Agency, Inc. (collectively "AAA") based on alleged violations of his early retirement agreement. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, AAA has moved for summary judgment on all four counts. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the defendants' motion on Counts I, II, and III because those claims are preempted by ERISA. Summary judgment will be granted in part on Count IV.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). Further, the "mere existence of a scintilla of evidence" to support the non-moving party's position is not sufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### BACKGROUND

Defendant AAA is a travel company that provides services, such as roadside assistance and trip planning, to its club members in addition to selling automobile, homeowners, and commercial insurance. (Comp.¶ 6.) Plaintiff William F. Cecil was employed by AAA from 1956 to 1959 and again from 1962 to 1985. (*Id.* ¶ 7.) He rose

within the company from underwriter to General Manager to Vice President. (*Id.*) In 1985, Mr. Cecil's position at the company was eliminated, and he accepted early retirement. (*Id.* ¶ 11.) [1]

Upon retirement, Mr. Cecil was eligible to receive benefits from the Automobile Club of Maryland Pension Plan. (Mem. Sup.Def.Mot. to Dis. at 2.) Separate from that plan, Mr. Cecil and AAA entered into a supplemental agreement which provided Mr. Cecil with additional retirement benefits. (Comp.¶ 12.) In that supplemental agreement, AAA agreed to

> code agency owned accounts with approximately $250,000 of premium to Cecil, for use, during his lifetime, in accordance with the terms of this agreement ... [and to] pay Cecil fifty percent (50%) of the commissions that IAI receives on all new premiums sold by Cecil [and] forty percent (40%) of the commissions that IAI receives on all renewal premiums that are coded to Cecil.

(Mem.Sup.Mot. to Dis., Ex. A. at 1.) In other words, AAA agreed to set aside a series of existing policies into a "book of business" and to pay Mr. Cecil a percentage of the commissions on the premiums received from those accounts. (Comp. ¶ 13.) [2] Further, the agreement provided that "should Cecil elect to receive retirement payments from the Federal Social Security System," his benefits under the agreement would be reduced to 20% of the renewal commissions. (Mem.Sup.Mot. to Dis., Ex. A. at 2.) The agreement was to remain in effect until Mr. Cecil died. (*Id.*, Ex. A at 1.)

Both sides agree that, if the series of policies had generated $250,000 in annual premiums, as it was designed to do, Mr.

Cecil would have been entitled to $15,000 annually. (Mem.Sup.Mot. to Dis. at 3; Comp. ¶ 13.) In the first year after his retirement, Mr. Cecil received $13,440.69 from the accounts, and AAA supplemented that income with an additional $1,559.31 to make a total of $15,000. (Mem.Sup.Mot. to Dis. at 3, Ex. C.) The next year, the accounts generated $9,900, and AAA provided $5,100. (*Id.* at 4, Ex. D.) In the third year, Mr. Cecil's accounts generated $17,180.31. (Clothier Supp.Aff., Ex. 1.) After that, AAA no longer supplemented the income generated by the accounts, and Mr. Cecil's annual benefits declined each year from $14,168.11 in 1989 to $2,708.05 in 1999. (*Id.*)

On April 7, 2000, Mr. Cecil filed suit in the Circuit Court for Baltimore County alleging breach of contract, unjust enrichment, and negligence, and asserting a claim for declaratory judgment and damages under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. ¶ 1001, *et seq.* The suit was properly removed to federal court pursuant to 28 U.S.C. § 1446(a) and (b). (Not. and Pet. for Removal, Ex. 2.) On May 30, 2000, AAA filed the present motion.

## ANALYSIS

In its motion, AAA contends that the state law claims asserted by Mr. Cecil in Counts I, II, and III are preempted by ERISA. In the alternative, AAA asserts that those claims, as well as the ERISA-based claim asserted in Count IV, are barred by the applicable statute of limitations and the equitable doctrine of laches. Initially, the court finds that the supplemental agreement signed by Mr. Cecil and AAA is an informal plan covered by

---

**1.** Mr. Cecil contends he was "forced" into early retirement (Cecil Aff. ¶ 2.) AAA, on the other hand, emphasizes that he signed a "voluntary retirement agreement." (Mot. to Dis. at 1.) For the purposes of this dispute, the perceived voluntariness of Mr. Cecil's retirement is immaterial. Second, there is some inconsistency regarding whether Mr. Cecil retired in 1985, (Cecil Aff. ¶ 2), or "approxi-

mately 1986," (Mot. to Dis. at 2). Again, that discrepancy is irrelevant to this opinion.

**2.** Creating such a "book of business" was apparently a common way in which AAA provided retirement benefits for sales employees. (Comp.¶ 14–15.) It was done for Mr. Cecil even though he was never a sales employee.

ERISA. Because they "relate to" that plan, 29 U.S.C. § 1144(a), the state law claims alleged in Counts I, II, and III are preempted. Further, the court finds that any damages alleged in Count IV that accrued more than three years prior to the filing of this suit are barred by the statute of limitations.

### I. The Supplemental Agreement

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). An "employee benefit plan" is defined to include "employee pension benefit plans" and "pension plans," 29 U.S.C. §§ 1002(3), (2)(A), which encompass "any plan, fund, or program ... established or maintained by an employer ... [that] provides retirement income to employees...." 29 U.S.C. § 1002(2)(A)(i). While the agreement certainly is "maintained" by AAA and "provides retirement income" to Mr. Cecil, there is some question about whether it constitutes a "plan, fund or program."[3]

The supplemental agreement does not mention ERISA and makes no attempt to comply with the reporting or disclosure requirements found in §§ 402 and 102. 29 U.S.C. §§ 1022, 1102. *See also Varity Corp. v. Howe,* 516 U.S. 489, 531, 116 S.Ct. 1065, 1087, 134 L.Ed.2d 130 (1996) (Thomas, J. dissenting) ("ERISA does impose 'a comprehensive set of reporting and disclosure requirements,' which is part of 'an elaborate scheme ... for enabling beneficiaries to learn their rights and obligations at any time.'" (quoting *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 1230, 131 L.Ed.2d 94 (1995))). These shortcomings, however, do not preclude the agreement from coverage under ERISA. Indeed, "[t]here is no requirement of a formal, written plan in either ERISA's coverage section ... or its definitions section." *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982). Thus, the reporting and disclosure requirements are responsibilities of the employer, not prerequisites to ERISA coverage. *Id.* If, as in this case, the specifications are not met explicitly, the court must analyze the agreement to determine if it constitutes a "plan, fund, or program."

In so doing, however, the court cannot simply rely on the definitions provided in the statute. *See Cvelbar v. CBI Illinois, Inc.,* 106 F.3d 1368, 1374 (7th Cir.1997), *abrogated on other grounds by Internat'l Union of Operating Engineers, Local 150, AFL—CIO v. Rabine,* 161 F.3d 427 (7th Cir.1998) ("these statutory definitions are tautological ... 'plan,' 'employee welfare benefit plan,' and 'employee pension benefit plan' all contain the word 'plan' within their definitions.") (citation omitted). Fur-

---

**3.** It is unclear if there is any disagreement between the parties on this issue. AAA contends that the supplemental agreement it entered with Mr. Cecil constitutes an employee benefit plan. While he does assert three state law claims, Mr. Cecil does not directly dispute that contention. Instead, he argues that the determination of ERISA preemption is premature. (Pl.'s Resp. at 6.) Accordingly, he "suggests a conditional dismissal of his state law claims provided that such claims are reinstituted if the Court ultimately determines ERISA to be inapplicable." (*Id.* at 7.) In support of this proposition, Mr. Cecil directs the court's attention to Judge Garbis's ruling in *Amos v. AAA Mid–Atlantic, Inc.,* Civil No. MJG–97–1105 (D.Md. Nov. 26, 1997), which involved facts substantially similar to those at issue here and, in which, Mr. Cecil contends, Judge Garbis "preliminarily determined" that

ERISA preempted certain state law claims. Judge Garbis's actual language was:

> Plaintiffs note that if, for some reason, it were determined that AAA had not established an ERISA-governed plan, their state law claims would not be preempted. It suffices to observe that in the unlikely event that, for some presently unforeseen reason, the Court should determine that, contrary to Plaintiffs' pleadings, there was no ERISA-governed plan, Plaintiffs could move to reinstate such of their common law claims as may be viable.

*Id.* at 14. To the extent that Mr. Cecil's state law claims would be preserved if there were no ERISA-governed retirement plan, this court agrees with Judge Garbis. Because, however, the court determines at this time that ERISA governs the supplemental plan, "conditional" relief is unnecessary.

ther, because it is so sparse, the court cannot rely solely on Fourth Circuit precedent. Fortunately, an analytical framework can be discerned from the cases decided in other Circuits and the Supreme Court.

█ Initially, just because AAA promised Mr. Cecil a "benefit," it did not necessarily create a "plan." *See McPherson v. Maryland Public Employees Council,* 943 F.Supp. 579, 583 (D.Md.1996) ("Congress required, in enacting ERISA, the presence of a 'plan,' even if there exists a 'benefit.' ") (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987)). *See also Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994) ("An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan."). Rather, "[t]he pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Kulinski,* 21 F.3d at 257. *See also Cvelbar,* 106 F.3d at 1374–75; *Delaye v. Agripac, Inc.,* 39 F.3d 235, 237 (9th Cir.1994). In *Fort Halifax,* the Supreme Court found that a Maine law requiring "a one-time lump sum payment triggered by a single event" did not create an ERISA plan because it "require[d] no administrative scheme whatsoever...." 482 U.S. at 12, 107 S.Ct. at 2218. This holding has been the basis for courts to conclude that agreements involving one-time or short-term payouts upon the termination or retirement of an employee do not constitute ERISA plans. *See, e.g., Delaye,* 39 F.3d at 237; *Kulinski,* 21 F.3d at 258; *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir.1992). On the other hand, schemes in which benefits are not easily calculated, payments require managerial discretion, and accounts require monthly

attention have been found to constitute ERISA plans. *See, e.g., Williams v. Wright,* 927 F.2d 1540, 1544–45 (11th Cir. 1991); *Cvelbar,* 106 F.3d at 1377–78. *See also Petr v. Nationwide Mutual Ins. Co.,* 712 F.Supp. 504, 506–08 (D.Md.1989) (distinguishing a final "buy-out" from protected income payable over a period of years).

█ In this case, AAA was obligated to keep separate a book of accounts coded to Mr. Cecil, manage those accounts, and distribute to him the premiums to which he was entitled. These actions constitute more than a "one-time obligation" and involve more discretion than simply writing a check. *Fort Halifax,* 482 U.S. at 12, 107 S.Ct. at 2218. The agreement, therefore, requires an ongoing administrative scheme.

█ Having decided that an ongoing administrative scheme is present, the court must determine whether the terms of the plan are reasonably ascertainable. "[A]n informal ERISA plan has been established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.' " *Elmore v. Cone Mills Corp.,* 23 F.3d 855, 861 (4th Cir.1994) (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982)).[4] Further, "[a]n informal plan may exist independent of, and in addition to, a formal plan as long as the informal plan meets all of the elements outlined in *Donovan.*" *Id.* The supplemental agreement signed by Mr. Cecil and AAA satisfies these requirements.

Initially, the "intended benefits" can be found on the face of the agreement. They are the specified percentages of the premium commissions obtained by AAA from the accounts coded to Mr. Cecil.[5] Also,

---

4. Every circuit has adopted this framework for determining if an ERISA plan was created. *See Cvelbar,* 106 F.3d at 1378 n. 14.

5. Mr. Cecil asserts that he is entitled to "retirement income in excess of $15,000 per

year." (Cecil Aff. ¶ 3.) Both sides agree that, if the accounts retained their $250,000 value, Mr. Cecil's portion of the premium commissions collected would be $15,000. (Mem.Sup. Mot. to Dis. at 3.) Further, AAA did supplement Mr. Cecil's income so that he received a

the "source of financing" is specified in the agreement as the accounts coded to Mr. Cecil.

The "class of beneficiaries" is somewhat more troubling because it consists solely of Mr. Cecil. *See Cvelbar,* 106 F.3d at 1375 ("arrangements that involve a single employee quite understandably have been met with a particularly careful scrutiny."). The Fourth Circuit, however, has found that there is no "requirement that a plan must cover more than one employee in order to be controlled by ERISA." *Biggers v. Wittek,* 4 F.3d 291, 297 (4th Cir. 1993) ("Neither the definition of 'employee welfare benefit plan' nor 'employee benefit' includes any suggestion that the number of employees covered is a limiting factor."). *See also Stiltner v. Beretta U.S.A. Corp.,* 844 F.Supp. 242, 245 (D.Md.1994) ("Recently, the Fourth Circuit has suggested that any agreement touching upon benefits of the type that are governed by ERISA— even a separate contract between a single corporate officer and his employer creating a corporate (rather than a plan) obligation—is preempted by ERISA."). This holding is in accord with the conclusions reached by the Seventh and Eleventh Circuits. *See Cvelbar,* 106 F.3d at 1375 ("the plain language of ERISA in no way excludes from coverage those situations in which only one employee is extended benefits."); *Williams,* 927 F.2d at 1545 ("we do not interpret *Donovan*'s use of the word 'class' as an absolute requirement of more than one beneficiary . . . ."). In this case, Mr. Cecil comprises the class of beneficiaries.

Finally, the "procedures for receiving benefits" are reasonably explained. Mr. Cecil was to receive payments from the time of his retirement until he died. And, as discussed above, AAA was required to set aside certain accounts and manage them so as to provide those benefits.

Because the supplemental agreement requires an "ongoing administrative scheme" and has "reasonably ascertainable" terms, it constitutes an ERISA plan.

## II. Preemption of Counts I, II, III

■ Because the supplemental agreement is a plan governed by ERISA, the court now must decide whether Mr. Cecil's state law claims for breach of contract, unjust enrichment, and negligence "relate to" that plan and are, therefore, preempted. The Supreme Court has held that the phrase "relates to" is "expansive" and "broad." *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). *See also Cone Mills,* 23 F.3d at 863 (citing *Shaw,* 463 U.S. at 739, 105 S.Ct. at 2380); *Stiltner,* 844 F.Supp. at 245 ("It is, of course, well established that ERISA's preemption provision contained in 29 U.S.C. § 1144(a), is extremely broad."). Further, "ERISA clearly preempts . . . claims alleging improper administration of the plan." *All Risks, Ltd. v. Equitable Life Assurance Society,* 931 F.Supp. 409, 414 (D.Md.1996).

The basis of Mr. Cecil's state law claims is that AAA has "failed to properly manage the accounts compromising [his] book of business." (Pl.'s Resp. at 9.) He argues that AAA has misfiled the accounts that were coded to him, failed to give him credit for "spin-off" business, and provided inadequate customer service to his accounts. (Comp.¶ 30.) In essence, these arguments

---

total of $15,000 in 1986 and 1987. (*Id.* at 3–4.) There is no indication apparent on the face of the supplemental agreement, however, that Mr. Cecil was entitled to precisely $15,000 each year. Rather, the agreement simply states that a series of accounts would be coded for Mr. Cecil, and that he should receive a percentage of the commissions obtained from those accounts. His benefits very well might fluctuate from year to year. That fluctuation does not mean that the benefits are not readily discernible.

amount to a contention that AAA has mismanaged and improperly administered Mr. Cecil's retirement fund. Indeed, administration of the retirement plan is the basis for each of the state law claims. They, therefore, "relate to" the plan and, accordingly, are preempted. *See Cone Mills,* 23 F.3d at 863 ("claims for breach of contract, fraud, unjust enrichment, breach of fiduciary duty, negligence, [and] accounting . . . 'relate to' an ERISA-covered plan . . . [and] are preempted.")

### III. Count IV: Declaratory Judgment and Damages Under ERISA

In the fourth count of his complaint, Mr. Cecil seeks a declaratory judgment stating that the supplemental agreement constitutes a "duly qualified ERISA plan . . . that the benefits thereunder are subject to ERISA's vesting provisions . . . and that AAA are fiduciaries. . . ." (Comp. at 14.) In response, AAA contends that the agreement does not meet any of the tax code or reporting provisions required to create a "qualified plan." (Def.s' Reply at 8–9.) Instead, AAA contends that "the Agreement is simply a non-qualified ERISA-covered retirement arrangement [and] does not provide vested or non-forfeitable benefits. . . ." (*Id.*) For the reasons explained above, the court concludes that the supplemental agreement is an informal plan governed by ERISA. That finding, coupled with the fact that AAA does not contest the applicability of ERISA to the claims for damages, renders a declaratory judgment unnecessary.

In addition to requesting declaratory judgment, Mr. Cecil claims money damages for benefits to which he was allegedly entitled and did not receive as well as an "Order requiring AAA to pay future retirement income to Cecil in the amount of $15,000 per year." (Comp. at 14.) In response, AAA contends that the claim for money damages is barred by the applicable statute of limitations and the doctrine of laches.

The court reads Mr. Cecil's request as a claim under the civil enforcement provision of ERISA, 29 U.S.C. § 1132.[6] It is well settled, and both sides agree, that Maryland's three-year statute of limitations applies to such a claim. *See, e.g., Shofer v. Hack Co.,* 970 F.2d 1316, 1319 (4th Cir. 1992) ("Because the claims that do not allege a breach of fiduciary duty are analogous to claims for either negligence or breach of contract, the court will apply the three-year statute of limitations for ordinary civil actions under Maryland law."); *Dameron v. Sinai Hospital of Baltimore,* 815 F.2d 975, 981 (4th Cir.1987) (applying the three-year statute of limitations because, "[f]or purposes of the applicable limitations period, however, this is an action under ERISA and is governed by that statute."). Although the parties agree to the length of the statutory period, they disagree about when it began to run. The court, therefore, must "determine the date the suit accrued because that time triggers the running of the statute." *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677, 679 (1981). *See also Harig v. Johns–Manville Products Corp.,* 284 Md. 70, 394 A.2d 299, 302 (1978) ("In a case in which limitations is an issue, it is necessary to ascertain the date from which the cause of action accrues.").[7]

Ordinarily, "[a]n ERISA cause of action does not accrue until a claim of benefits has been made and formally denied." *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.1989) (citations omitted). Aside from the filing of

---

6. That section provides for suit
   by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
   29 U.S.C. § 1132(a)(1)(B).

7. While determining the accrual date often is a question of fact for the jury, *see O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313, 1320 (1986), there is sufficient undisputed evidence in this case for the accrual date to be determined as a matter of law.

this lawsuit, however, Mr. Cecil has not made a formal request for benefits, as he began to receive benefits when he retired in 1985. In that situation, the Fourth Circuit applies "the alternative approach of determining the time at which some event other than a denial of a claim should have alerted [the claimant] to his entitlement to the benefits he did not receive." *Cotter v. Eastern Conf. of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir.1990). "This approach is consistent with the maxim that, in Maryland, the discovery rule [is] applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger*, 431 A.2d at 680.

■ Indeed, Mr. Cecil relies on *Poffenberger* in arguing that his cause of action did not accrue until approximately 1999 when he "learned that problems similar to those [he] was experiencing were being experienced by a group of AAA's retired commissioned salespersons" and that these problems might be due to the mismanagement of the books of business by AAA. (Pl.'s Resp., Cecil Aff. ¶ 5–6.) Mr. Cecil's argument misconstrues the discovery rule because the time at which he knew the cause of the reduction in his yearly benefits is not determinative. Rather, the pertinent analysis involves a determination of the time at which he was sufficiently aware that he had been harmed.

The Fourth Circuit confronted a similar issue in *Dameron*. In that case, the plaintiffs alleged that their employer had incorrectly offset their pension benefits by an amount greater than the Social Security benefits they had received. 815 F.2d at 977. In its opinion, the court stated:

> The plaintiff contends that, even if the statute of limitations for contract actions applies in this case, the period did not commence to run until she discovered the method by which Sinai calculated estimated Social Security benefits. The limitation period began running when the plaintiff was notified in June of 1980

that Sinai intended to offset her benefits by an estimate that was greater than the actual amount of Social Security benefits that she was receiving. While she was unaware of the exact reason for the difference between Sinai's estimate and her actual benefits, she was at that point on notice that she should pursue her rights under ERISA.

*Id.* at 982 n. 7. The same reasoning applies to Mr. Cecil. He was aware long before 1999 that he was receiving less than the $15,000 per year to which he thought he was entitled. (*See* Cecil Aff. ¶ 4.) That he could not ascertain the reason for the deficiency does not imply he was not on notice that his rights possibly were being infringed.

■ That conclusion does not, however, end the analysis of Mr. Cecil's claim. In *Dameron*, the court found that each time the hospital miscalculated the offset, it breached the vesting provisions of ERISA. It concluded further that the statute of limitations began running for claims based on each benefits check when that check was issued. *Dameron*, 815 F.2d at 982 ("Sinai's violation of the vesting provisions of this plan, like an analogous breach of contract action, constituted a series of successive breaches of the nonforfeiture provisions of ERISA.") The court held, therefore, that the plaintiff's "claim in this action is limited to a claim for pension benefits which was denied within three years prior to commencement of her suit against Sinai." *Id.*

Mr. Cecil contends that the same reasoning applies in this case. In response, AAA argues that *Dameron* would apply only if Mr. Cecil challenged "the method AAA used to integrate social security benefits into [his] retirement income benefits." (Def.s' Reply at 4.) AAA also attempts to distinguish *Dameron* on the grounds that Mr. Cecil does not allege a miscalculation of the benefits to which he was entitled. (*Id.* at 5.) The court finds these distinctions unpersuasive. The holding in *Dam-*

668

*eron* was based on the rule restated in *Singer Co. v. Baltimore Gas and Elec. Co.:*

> where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.

79 Md.App. 461, 558 A.2d 419, 426 (1989) (allowing a claim for damages based on interruption in electricity supply that occurred less than three years previously). *See also Avery v. Weitz*, 44 Md.App. 152, 407 A.2d 769, 771 (1979) (citing cases for the proposition that, under a note providing for the periodic payment of a debt, the statute of limitations begins to run on each installment when it comes due and is not paid); *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md.App. 605, 698 A.2d 1167, 1192 (1997) ("Where the duty to defend and potentially to indemnify might attach, the failure to perform that duty with respect to each separate claim would constitute a distinct breach."); *Kaliopulus v. Lumm*, 155 Md. 30, 141 A. 440, 445 (1928) ("on the happening of any breach the covenantees had a right of action, no matter the number of preceding breaches, as each successive breach in the course of the continuing or recurring breaches was constantly creating fresh causes of action.").

Mr. Cecil alleges that AAA mismanaged his book of business and issued him benefits checks for the wrong amounts each year. He, therefore, has alleged a series of successive breaches analogous to those asserted in *Dameron*. For that reason, the court finds that any claims Mr. Cecil may assert for damages that accrued less than three years prior to the filing of this lawsuit are not barred by the statute of limitations.[8]

Thus, the court will grant AAA's motion for summary judgment on Count IV in part. Those claims for damages which arose more than three years prior to the filing of this lawsuit are barred by the statute of limitations. The remaining claims survive the motion.

**8.** AAA also has raised the equitable defense of laches. Limiting the damages claim to three years should alleviate some of the defendants' concerns on this issue. Denial of the laches argument, however, is without prejudice to its renewal if warranted in connection with the death of a potential witness, John H. Mauk.