James W. **EMERY**

v.

**BAY CAPITAL CORPORATION**

**No. CIV.A.WMN–04–2726.**

United States District Court,
D. Maryland.

Jan. 25, 2005.

---

Gregory C. Krog, Jr., Law Office of Gregory C. Krog Jr., Memphis, TN, Jeffrey Louis Forman, Kauffman and Forman PA, Towson, MD, for Plaintiff.

Christopher M. Feldenzer, Jeffrey E. Rockman, Serotte Rockman and Wescott PA, Towson, MD, for Defendant.

## *MEMORANDUM*

NICKERSON, Senior District Judge.

Before the Court is Defendant's motion for partial dismissal. Paper No. 19. The motion is ripe for decision. Upon review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion should be denied.

This case relates to an alleged promise for severance pay. Defendant is engaged in the business of retail and wholesale mortgage lending. In October of 2002, Defendant approached Plaintiff James W. Emery to manage its net branching division. After a period of negotiation, Defendant sent Plaintiff an e-mail (the Offer E-mail) setting out the terms of an offer of employment that including the following items:

- reimbursement for business travel and expenses

. . . . .

- Severance—after a period of six months (honeymoon) six months salary if terminated for any reason other than fraud or misrepresentation[.]

Complaint at ¶ 3. Plaintiff accepted the offer and began working as Defendant's Director of Net Branching in November 2002.

In October of 2003, Defendant decided to terminate Plaintiff's position. According to the Complaint, this decision was unrelated to Plaintiff's conduct or performance. Thereafter, Plaintiff requested that Defendant honor its agreement to reimburse him for certain travel expenses incurred during the course of his employment and to provide him with the promised severance pay. When Defendant refused to do so, Plaintiff filed suit in state court in Tennessee, Plaintiff's home state. Plaintiff asserts claims for breach of contract under Tennessee and Maryland law, as well as for violation of the Maryland Wage Payment and Collection Act, Md. Code Ann., Lab. & Empl. § 3–505 (Maryland Wage Act). As relief, Plaintiff seeks severance pay in the amount of $36,000, treble damages in the amount of $108,000, and reimbursement of travel expenses in the amount of $719.50.

Defendant removed the action to the United States District Court for the Western District of Tennessee, asserting federal jurisdiction on the basis of diversity and preemption under the Employment Retirement Income Security Act (ERISA). Defendant then moved to dismiss the case for lack of personal jurisdiction, or in the alternative, to transfer. In response to Defendant's motion, the case was transferred here. Defendant has now moved for partial dismissal, arguing that Plaintiff's breach of contract and Maryland Wage Act claims are preempted under ERISA insofar as they relate to any claim for severance pay.[1]

In enacting ERISA, Congress stated that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit *plan.*" 29 U.S.C. § 1144(a) (emphasis added). Courts have interpreted this provision broadly, holding that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In a decision upon which Defendant relies heavily, *Bogue v. Ampex Corp.,* 976 F.2d 1319 (9th Cir.1992), the Ninth Circuit characterized ERISA preemption as "notoriously broad," but also noted that "recent cases have held that it has reasonable limits." *Id.* at 1322.

■ There is no dispute that severance pay can be considered an "employee benefit" as that term is defined under ERISA. *See Holland v. Burlington Indus., Inc.,* 772 F.2d 1140 (4th Cir.1985). ERISA's preemption provision, however, does not refer to state laws relating to "employee benefits," but rather to state laws relating to "employee benefit *plans.*" Therefore, the issue before this Court is whether Defendant's promise to Plaintiff to provide severance pay created a "benefit plan."

Many courts have noted that the ERISA statute itself provides little assistance in determining whether an employer's provision of employee benefits is pursuant to a "plan." *See, e.g., Fort Halifax v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("the terms 'employee benefit plan' and 'plan' are defined only tautologically in the statute"); *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 454 (1st Cir.1995) ("The text of ERISA itself affords scant guidance as to what constitutes a covered 'plan.' "). In *Fort Halifax* and it progeny, the courts have supplied the analytical framework missing from the statute, although as one court notes, this area re-

[1] The instant motion does not address Plaintiff's claim for travel reimbursement.

mains a "cloudy corner of the law." *Belanger*, 71 F.3d at 455. "[E]ach case must be appraised on its own facts. All that can be stated with assurance is that *Fort Halifax* controls." *Id.*

In *Fort Halifax*, the Supreme Court examined a Maine statute that required employers to provide a one-time severance payment to employees who lost their jobs as a result of a plant closing. In concluding that this statute was not preempted by ERISA, the Court explained,

> Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. **The concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.** It is for this reason that Congress preempted state law relating to *plans*, rather than simply to benefits. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulations.
>
> The Maine statute neither established, nor requires an employer to maintain, an employee benefit *plan*. The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligations. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more

than write a check hardly constitutes the operation of a benefit plan.

482 U.S. at 11–12, 107 S.Ct. 2211 (underscored emphasis in original, bold emphasis supplied).

█ Thus, according to the Supreme Court, a court must first find an ongoing administrative program or scheme in order to conclude that there is an employee benefit *plan*. Remarkably, Defendant takes the position that the Fourth Circuit somehow eliminated this requirement by its failure to mention *Fort Halifax* in a particular decision addressing a claim for severance pay, *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291 (4th Cir.1993). Defendant contends that the Fourth Circuit's "silence with regard to an administrative scheme [in *Biggers* ] is telling; if the [Fourth Circuit] intended to recognize an administrative scheme requirement, it should have made that clear." Reply at 8. Caution should be exercised before finding that a court has overturned itself *sub silencio:* extreme caution before finding that a lower court has attempted to overturn a higher court *sub silencio.*

At issue in *Biggers* was an alleged agreement by an employer to modify its generally applicable severance policy as to one of its officers. While the Fourth Circuit held that this agreement constituted a benefit plan governed under ERISA, it is clear that the only challenge that the plaintiff raised to that finding was that "a distinct arrangement covering only one employee" cannot fall under ERISA. *See,* 4 F.3d at 297. Even before addressing that narrow challenge, however, the Fourth Circuit noted that "it is not altogether clear that [the plaintiff's] arrangement is an individual one and not part of the generally applicable [ ] policy." *Id.* Because the general policy specifically allowed for individual arrangements to set aside the general provisions, the court observed

that, "even if an individual arrangement for severance pay had been reached, it would appear that it was by virtue of this policy." *Id.*

As an alternative holding, however, the court did hold that, even accepting the characterization that the alleged agreement was a distinct arrangement covering only one employee, it was nonetheless an ERISA plan.[2] The court reached this conclusion without reference to *Fort Halifax* and with no discussion as to any other aspect of the agreement. Noting the absence of any discussion of *Fort Halifax* in *Biggers,* one of the district courts in this circuit has observed that, "the Fourth Circuit has had no occasion to apply the *Fort Halifax* test and therefore provides no controlling precedent on where it would draw the lines in determining what benefits require an ongoing administrative scheme." *Blair v. Young Phillips Corp.,* 158 F.Supp.2d 654, 659 n. 2 (W.D.N.C. 2001).[3]

In the wake of *Fort Halifax,* other courts have developed multi-factor tests to determine the existence of an "ongoing administrative scheme." The Eighth Circuit's test, which is typical, looks to the following factors:

1) whether the payments are one-time lump sum payments or continuous payments;

2) whether the employer undertook any long-term obligation with respect to the payments;

3) whether the severance payments come due upon the occurrence of a single, unique event or whenever the employer terminates employees; and

4) whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

*Emmenegger v. Bull Moose Tube Co.,* 197 F.3d 929, 934 (8th Cir.1999). No one factor is typically determinative. *Donovan v. Branch Banking & Trust Co.,* 220 F.Supp.2d 560, 565 (S.D.W.Va.2002).

■ Rightly anticipating that this Court would reject its invitation to ignore clearly controlling case law, Defendant offers as a fall-back position the contention that, "assuming [ ] that the Fourth Circuit would recognize an 'administrative scheme' requirement, the Offer [E-mail] more than satisfies that requirement, as construed by other courts." Reply at 8. Regarding the first and second factors, Defendant asserts that because the Offer E-mail is silent as to how and when the severance payment was to be made, it did not require a lump sum payment: Defendant could have issued a pay check for each pay period during the six months following Plaintiff's termination. As to the third and fourth factors, Defendant contends that, because the Offer E-mail conditioned severance pay on "terminat[ion] for any reason other than fraud or misrepresentation," it "obligated [Defendant] to analyze the particular reasons for and circumstances surrounding

---

**2.** While other courts have also held that there can be "one-person plans" under ERISA, they have cautioned that "arrangements that involve a single employee quite understandably have been met with a particularly careful scrutiny." *Cvelbar v. CBI Illinois Inc.,* 106 F.3d 1368 (7th Cir.1997); *see also Herring v. Oak Park Bank,* 963 F.Supp. 1558, 1568 (D.Kan.1997) (observing that the existence of a single beneficiary "does suggest that an actual administrative program was not required for the Agreement's administration.").

**3.** The Fourth Circuit has since applied the *Fort Halifax* test, albeit in an unreported decision. *Lomas v. Red Storm Entertainment, Inc.,* 49 Fed.Appx. 396, 2002 WL 31409896 (4th Cir.2002). Consistent with *Fort Halifax,* the court held that, "if a benefit plan does not require an administrative scheme in order for an employee to fulfill its obligations thereunder, it appears not to be governed by ERISA." 49 Fed.Appx. at 400.

Plaintiff's termination and exercise discretion in determining whether he was entitled to severance pay." Reply at 8.

Assuming that Defendant is correct that the Offer E-mail could reasonably be interpreted as allowing periodic payments over six months, this interpretation gives minimal support, at best, for ERISA preemption. Under similar circumstances, courts have held that "is it [im]material that some of the Agreement's triggering events provided for payment to plaintiff of the determined amount over a number of months." *Herring v. Oak Park Bank,* 963 F.Supp. 1558, 1559 (D.Kan.1997). *See also Delaye v. Agripac, Inc.,* 39 F.3d 235, 237 (9th Cir.1994) ("While payment could continue for as long as two years, there is nothing discretionary about the timing, amount, or form of the payment."); *James v. Fleet/Norstar Fin. Group,* 992 F.2d 463, 466 (2nd Cir.1993) ("The employee's option to receive the money in bi-weekly installments instead of in a lump sum did not change the basic situation."); *Wells v. General Motors Corp.,* 881 F.2d 166, 176 (5th Cir.1989) (Option for employees to elect two-year installment payments did not render program "ongoing, nor was there any need for continuing administration of the payment program."); *Plante v. Foster Klima & Co.,* Civ. No. 03–3553, 2004 WL 2222318 at *5. (D.Minn.2004) ("While the payments would occur on a monthly basis for a year, and there would be one payment on a yearly basis for a number of years, this type of periodic payment in and of itself does not transform the agreement into an ERISA plan."). Simply continuing to pay Plaintiffs salary for six months after his termination, presumably out of Defendant's general fund,

does not require the establishment of a separate, ongoing administrative scheme to administer these severance benefits.

As to Defendant's arguments based on the need for a determination as to whether Plaintiff was terminated because of fraud or misrepresentation, there are a few decisions that would appear to support such a conclusion. For example, in *Pane v. RCA Corp.,* 667 F.Supp. 168, 171 (D.N.J.1987), *aff'd,* 868 F.2d 631 (3rd Cir.1989), the district court held that, because the employer's severance agreement provided that the employee was only entitled to benefits if terminated for reasons other than "for cause," "the circumstances of each employee's termination must be analyzed in light of these criteria, and an ongoing administrative system constituting an ERISA plan exists." Similarly, in *Antolik v. Saks Inc.,* 278 F.Supp.2d. 997, 1003 (S.D.Iowa 2003), the severance agreement provided for payments if the employee is terminated "without cause" within two years of a defined event. "For cause" was defined in the agreement as including acts of fraud and dishonesty. *Id.* at 1004. The need for this discretionary determination as to the reason for the termination was one factor leading the court to conclude that the agreement created the need for an ongoing administrative scheme. *Id.*

There is, however, a more persuasive body of case law in which this minimal amount of discretion is held not to require an ongoing administrative scheme. While Defendant looks for support for its position in the Ninth Circuit decision in *Bogue v. Ampex Corp.,* 976 F.2d 1319 (9th Cir. 1992),[4] two later decisions from that same court, *Delaye v. Agripac,* 39 F.3d 235 (9th

---

4. In *Bogue,* which arose out of the loss of some upper management jobs due to the sale of subsidiary, severance payments were conditioned upon whether the employees were able to obtain "substantially equivalent em-

ployment" with the parent company or the purchaser of the subsidiary. It was the need for a determination of "substantial equivalence" that the court concluded required an administrative scheme. 976 F.2d at 1323.

Cir.1994) and *Velarde v. PACE Membership Warehouse, Inc.,* 105 F.3d 1313 (9th Cir.1997), demonstrate that an ongoing administrative scheme is not required simply because there is the need to resolve whether a termination was "for cause."

In *Delaye,* the plaintiff's employment contract provided that if he was terminated without cause his employer would pay him a fixed monthly amount for twelve to twenty four months according to a set formula, as well as provide him with some continuing benefits during that same period. After the plaintiff was fired and his former employer refused to pay any severance benefits, the plaintiff sued under ERISA. In overturning the district court's conclusion that this one-person employment contract constituted an ERISA plan, the Ninth Circuit distinguished this case from its earlier decision in *Bogue,* holding,

> Delaye's contract does not implicate an ongoing administrative scheme. Once Agripac decided to terminate Delaye, the severance calculation became one akin to that in *Fort Halifax*—a straightforward computation of a one-time obligation. The obligation was either to pay Delaye his regular salary prorated to the date of his termination, if he was terminated for cause; or pay him a fixed monthly amount for twelve to twenty-four months according to a set formula, plus accrued vacation pay and insurance benefits, if he was terminated without cause. While payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment. Sending Delaye, a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the employment contract

does not rise to the level of an ongoing administrative scheme.

39 F.3d at 237.

In *Velarde,* the Ninth Circuit extended its holding in *Delaye* to circumstances which arguably presented even more compelling support for ERISA preemption. In *Velarde,* 25 plaintiffs were offered severance benefits in a "Stay On Letter." These benefits were conditioned upon meeting two eligibility requirements: 1) that the employee performs his duties in a satisfactory manner; and 2) that the employee not be terminated "for cause." Nonetheless, the court held that the Stay On Letter did not create a ERISA plan, reasoning that

> [h]ere, as in *Delaye,* the employer was simply required to make a single arithmetical calculation to determine the amount of the severance benefits. While in both cases, a "for cause" termination would change the benefits due to the employee, the *Delaye* court did not deem this minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan. Contrary to PACE's assertions, the key to our holding in *Bogue* was that there was "*enough* ongoing, particularized, administrative discretionary analysis," 976 F.2d at 1323 (emphasis added), to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.

105 F.3d at 1317. *See also Donovan,* 220 F.Supp.2d 560, 566 (S.D.W.Va.2002) (holding that need for a "for cause" determination is insufficient to turn a simple sever-

ance agreement into an ERISA plan, citing *Velarde* ).

The Court recognizes that decisions such as *Pane* and *Antolik* cannot be completely reconciled with cases such *Delaye*, *Velarde*, and *Donovan*. This Court concludes, however, that the reasoning of *Delaye* and *Velarde* is more persuasive and is more in keeping with the holding of *Fort Halifax*. No authority from this circuit compels a different result.[5]

When Defendant sent Plaintiff an e-mail promising severance pay equal to six months pay if he were to be terminated without cause, it was conditioning payment on a contingency that might never occur. If Defendant did terminate Plaintiff, presumably it would know the reason for that decision and whether it was for cause—no new administrative structure had to be put in place to render that determination. If Plaintiff was found to be entitled to severance payment, fulfilling Defendant's obligation under the agreement involves no more than writing a single check for a predetermined amount (or a short series of checks equal to that same amount). No long term obligations on the part of Defendant are implicated. To say that this e-mail created an employee benefit plan would stretch beyond recognition the common sense meaning of the word "plan."

■ In light of the admonition that there must be some reasonable limits to the scope of ERISA preemption, and that careful scrutiny must be given to a plan involving a single beneficiary, the Court concludes that Plaintiff's claims related to the alleged promise of severance pay are not preempted under ERISA. A separate order consistent with this memorandum will issue.

## ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 25th day of January, 2005 by the United States District Court for the District of Maryland, ORDERED:

1) That Defendant's Motion to Dismiss, Paper No. 19, is hereby DENIED; and

---

5. As noted above, one district court within the Fourth Circuit has found no ERISA preemption under circumstances similar to those presented here. *See Donovan*. The two Maryland cases cited by Defendant in support of its position, *Cecil v. AAA Mid-Atlantic*, 118 F.Supp.2d 659 (D.Md.2000) and *McCarthy v. Bowe Bell + Howell Co.*, Civ. No. JFM–04–1799, 2004 WL 2005608 (D.Md.2004), are readily distinguishable on their facts. In *Cecil*, the plaintiff maintained that he was entitled to a multi-year distribution of retirement benefits tied to insurance premiums on a particular "book of business." Before addressing whether this agreement constitutes a "plan, fund or program," Judge Blake remarked that "[i]t is unclear if there is any disagreement between the parties on this issue." 118 F.Supp.2d at 663 n. 3. After citing *Delaye* with approval, she distinguishes it from the case before her by noting,

[i]n this case, AAA was obligated to keep separate a book of accounts coded to Mr. Cecil, manage those accounts, and distribute to him the premiums to which he was entitled. These action constitute more than a "one-time obligation" and involve more discretion than simply writing a check. The agreement, therefore, requires an ongoing administrative scheme.

*Id.* at 664. Obviously, there are no similar obligations in the instant action.

In *McCarthy*, the agreement that Judge Motz found to be preempted under ERISA involved the promise to provide medical, surgical, hospitalization and prescription drug benefits to the employee and his spouse until age 65 and to provide "65 Special" coverage for the employee and spouse after they reach 65. In addition, under the agreement their prescription drug coverage was to continue for life. Unlike the simply severance payment promised Plaintiff, these benefit obviously represent a long term obligation on the part of the employer and the need for an administrative structure to assure their provision.

2) That the Clerk of Court shall transmit copies of this Memorandum and Order to all counsel of record.