UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL LOMAS,
            *Plaintiff-Appellant,*

v.

RED STORM ENTERTAINMENT,
INCORPORATED,
            *Defendant-Appellee.*

No. 01-2139

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-01-237-5-BO)

Argued: September 23, 2002

Decided: October 28, 2002

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Lisa Grafstein, GRAFSTEIN & WALCZYK, P.L.L.C.,
Raleigh, North Carolina, for Appellant. James Benjamin Trachtman,
KILPATRICK STOCKTON, L.L.P., Raleigh, North Carolina, for
Appellee. **ON BRIEF:** Hayden J. Silver, III, KILPATRICK STOCK-
TON, L.L.P., Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Michael Lomas appeals the district court's award of summary judgment in favor of his former employer, Red Storm Entertainment, Inc. ("Red Storm"). Lomas sued Red Storm seeking benefits due under an individual retention/severance agreement (the "Agreement"),[1] alleging violations of both the common law and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). The district court concluded that the Agreement was part of Red Storm's Retention and Severance Program (the "RSP"), and it awarded summary judgment in favor of Red Storm on the basis that Lomas did not exhaust the remedies provided in the RSP and failed to show that resort to the internal grievance procedure would have been futile. *See Lomas v. Red Storm Entm't, Inc.*, No. 5:01-CV-237-BO(2), Order (E.D.N.C. Aug. 14, 2001) (the "Order"). As explained below, we vacate and remand.

I.

A.

Lomas was initially employed in 1997 by Red Storm, a video game publisher, as its Vice President of Product Development. He first worked in the United Kingdom and in 1998 he transferred to North Carolina.[2] In addition to serving as Vice President of Product Devel-

---

[1]Red Storm and Lomas entered into the retention/severance agreement on June 6, 1999; it was subsequently amended on June 14, 2000. We refer to the retention/severance agreement and its amendment collectively as the "Agreement."

[2]In reviewing an award of summary judgment, we are obliged to construe the underlying facts in the light most favorable to the party opposing the motion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 928 (4th Cir. 1995).

opment, Lomas was the Secretary of Red Storm's Board of Directors. On June 4, 1999, Red Storm established the RSP, which provides discretionary severance benefits to its employees in the event that their employment is terminated. On June 6, 1999, Red Storm and Lomas executed the Agreement, which provides Lomas with specific severance benefits in the event of termination. In 2000, Red Storm engaged in negotiations with another software company, Ubi Soft, regarding a possible acquisition and merger. On June 14, 2000, Red Storm amended its Agreement with Lomas to provide him greater protection in the event a corporate merger between Red Storm and Ubi Soft was consummated. The amendment authorized Lomas to receive severance benefits not only if he was terminated, but also in the event he resigned for "good reason" during a specified period surrounding a change in the control of Red Storm.

In September of 2000, Red Storm was acquired by Ubi Soft, and it was subsequently merged with one of Ubi Soft's subsidiaries, Ubi Soft Newco 1. Lomas alleges that, following the merger, he experienced a diminution in status. For example, he was no longer involved in the strategy and direction of Red Storm, he was removed as Secretary of its Board of Directors, and while other staff members received pay increases, he did not. On October 29, 2000, Lomas sent an e-mail to his then supervisor, Christine Burgess, outlining his concerns regarding these changes in his status. In a subsequent conversation between Ms. Burgess and Lomas, on November 10, 2000, Ms. Burgess agreed that Lomas's role with Red Storm had been reduced.

Soon thereafter Lomas spoke with Red Storm's lawyer and, on December 15, 2000, the lawyer provided Lomas with a proposed severance package, as well as a separate consulting agreement. The proposal would have given Lomas benefits that were significantly reduced from those available to him under the Agreement. Lomas rejected the proposed severance package and resigned from Red Storm in January of 2001. He alleges that, in the weeks leading up to his resignation, both he and his attorney requested that Red Storm pay the severance benefits due him under the Agreement. In response, Lomas was advised by Red Storm's lawyer and its Financial Controller that he would not be paid in accordance with the Agreement.

B.

Lomas filed his complaint against Red Storm on February 22, 2001, in the Wake County, North Carolina, Superior Court, alleging a common law breach of contract and a violation of ERISA. Red Storm then removed the case to the Eastern District of North Carolina, asserting that Lomas's claims were governed by ERISA. On April 19, 2001, Red Storm moved to dismiss Lomas's complaint for failure to exhaust the RSP's remedies, supporting its motion with a copy of Red Storm's RSP, Lomas's resignation letter, and several affidavits. In response to the motion to dismiss, Lomas also submitted various supporting documents to the court, including his own affidavit and his e-mail of October 29, 2000, to Ms. Burgess.

In its Order of August 14, 2001, the district court observed that Red Storm had failed to denominate the procedural rule under which its motion was filed. However, because the parties had presented it with materials outside the pleading in connection with the motion to dismiss, the court converted the motion to dismiss to a motion for summary judgment.[3] Order at 2. The court then determined that the RSP was governed by ERISA and that the Agreement constituted part of the RSP. Accordingly, it granted summary judgment in favor of Red Storm because Lomas had failed to exhaust the remedies provided to him in the RSP. *Id.* at 4. Lomas filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

This Court reviews de novo a district court's award of summary judgment, applying the same legal standards used by the district court and viewing the facts and inferences drawn therefrom in the light most favorable to the non-movant. *Lone Star Steakhouse & Saloon v.*

---

[3]Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court is required to treat a Rule 12(b)(6) motion to dismiss as a summary judgment motion when "matters outside the pleading are presented to and not excluded by the court." In such a situation, "the motion shall be . . . disposed of as provided in Rule 56, and all parties [must] be given [a] reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

*Alpha of Va.*, 43 F.3d 922, 928 (4th Cir. 1995). Summary judgment is not appropriate unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, the ultimate issue of whether an employee benefit plan is governed by ERISA is a mixed question of fact and law. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

III.

A.

In order to determine whether Red Storm was entitled to summary judgment in this case, it is necessary for us to first examine in some detail the provisions of both the RSP and the Agreement.

On June 4, 1999, Red Storm established the RSP, which provides discretionary benefits to Red Storm employees in the event such employees are terminated. The RSP is plainly regulated by ERISA because it is an "employee benefit plan" established by an "employer engaged in commerce." 29 U.S.C. § 1003(a)(1). The RSP allows the Program Administrator, "in its sole discretion," to award a severance allowance to an employee. RSP at § 3. Additionally, the RSP permits Red Storm to "amend or terminate" it at any time, and it also provides that, except to the extent preempted by ERISA, it is to be "construed in accordance with the laws of the State of North Carolina." *Id.* at §§ 8, 9. Finally, the RSP contains an internal grievance procedure, pursuant to the requirements of ERISA. *See* 29 U.S.C. § 1133. This procedure provides that, when a claimant is unsatisfied with the decision of the Program Administrator regarding a claim for benefits under the RSP, he "may appeal the decision . . . by filing a written request with the Program Administrator." *Id.* at § 7. Within sixty days of the filing of the written request, the "claimant shall receive written notice of the Program Administrator's final decision." *Id.*

The Agreement recites, in its introductory paragraph, that it is made "pursuant to the terms and conditions" of the RSP, and it specifies the severance benefits due Lomas in the event he resigns for "good reason" or if he is terminated.[4] Agreement at ¶ 5. In addition,

---

[4]The Agreement defines "good reason" as including the "termination of [an] Employee's employment by Employee within three months prior

the Agreement states that it "supersedes all prior agreements and understandings" and provides that "no change, modification, [or] termination [will be] binding upon any party . . . unless reduced to writing and signed by the party against whom enforcement is sought." *Id.* at ¶ 4, 5. In contrast to the RSP, which may be terminated by Red Storm at any time, the Agreement provides that it "shall remain in effect for the duration of the Employee's employment with the Company." *Id.* at ¶ 1. The choice of law provision in the Agreement makes no mention of ERISA preemption, and it mandates that the Agreement be construed in accordance with North Carolina law. *Id.* at ¶ 8. Finally, the Agreement provides that, in the event Lomas is entitled to benefits thereunder, he will "not be entitled to benefits under any other severance plan, policy or arrangement of the Company." *Id.* at ¶ 10.

### B.

The principal issue in this case is whether the Agreement is governed by ERISA, either of its own accord or by virtue of its connection to the RSP. As explained below, we conclude that there are genuine issues of material fact on both of these points. Specifically, it is unclear whether the Agreement, on its own, constitutes an "employee benefit plan" within ERISA; and it is similarly unclear whether the Agreement is governed by ERISA as part of the RSP.

### 1.

First, the fact that the Agreement addresses the issue of severance benefits is, standing alone and absent some connection to the RSP, insufficient to bring it under the umbrella of ERISA. In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), the Supreme Court explained the types of employee benefit arrangements that trigger ERISA preemption. It pointed to the express language of ERISA, which calls for the preemption of any state law that "relate[s] to any

---

to or eighteen months following a Change of Control on account of . . . a material diminution in status," "a reduction in Base Salary," or "a transfer to a location necessitating a change in his principal residence." Agreement at ¶ 2(h)(v).

employee benefit *plan*." *Id.* at 8 (quoting 29 U.S.C. § 1144(a)) (emphasis in original). The Court made clear that ERISA regulates employee benefit plans, not simply employee benefits. The Court determined that a benefit "plan" is one that "requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11. The Court went on to conclude that an arrangement requiring a "one-time, lump-sum payment triggered by a single event," particularly one that might never occur, is not a "plan" regulated by ERISA. *Id.* at 12. In so concluding, the Court emphasized that such a payment "requires no administrative scheme whatsoever." *Id.* Thus, if a benefit plan does not require an administrative scheme in order for an employer to fulfill its obligations thereunder, it appears not to be governed by ERISA.

In our assessment of this case, we are impressed by and find persuasive the decision of one of our sister circuits. In *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254 (8th Cir. 1994), the Eighth Circuit had occasion to assess whether a similar agreement was governed by ERISA. In so doing, it determined that the terms of that agreement did not fall within ERISA's regulatory scope because "once a . . . takeover occurred and [the employee] resigned his employment . . . there was nothing for the company to decide, no discretion for it to exercise, and nothing for it to do but write a check." *Id.* at 258.

A straightforward application of the *Fort Halifax* and *Kulinski* standards to the Agreement between Red Storm and Lomas indicates that it is not inherently governed by ERISA. The Agreement provides Lomas with severance benefits if he is terminated, or if he has "good reason" to end his employment in the three-month period prior to a change of control, or in the eighteen-month period following a change of control. The term "good reason" is defined in the Agreement, *see supra* note 4, thus leaving Red Storm with no discretion to determine either (a) whether Lomas was entitled to severance benefits, or (b) the amount of benefits he was to receive. Therefore, the Agreement, on its face, is similar to the one in *Kulinski*; it does not require an administrative scheme and it does not appear to be an employee benefit plan as defined by ERISA.

2.

We are similarly unconvinced, on this record, that the Agreement is part of the RSP. As we have pointed out, it is undisputed that the RSP is an employee benefit plan regulated by ERISA. Therefore, if the Agreement is part of the RSP, it too is governed by ERISA. As a result, and as the district court properly recognized, Lomas's state law contract claim would be preempted. Unless resort to the internal grievance procedure would be futile, the court would be required, pursuant to ERISA, to dismiss Lomas's ERISA claim for failure to exhaust the remedies provided by the RSP. *Makar v. Health Care Corp. of the Mid-Atlantic (Carefirst)*, 872 F.2d 80, 82 (4th Cir. 1989) ("[A]n ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.").

In concluding that the Agreement constituted part of the RSP, the district court relied exclusively on the Agreement's introductory paragraph, which recites that it was "made and entered into . . . pursuant to the terms and conditions of the [RSP]." However, this introductory recitation, when read in context with the balance of the Agreement and the RSP, is hardly dispositive of the ERISA question. For example, the Agreement, executed after the RSP was created, specifically supersedes all prior agreements and understandings between Lomas and Red Storm on the issue of severance benefits. Agreement at ¶ 4. This provision could well signify that the Agreement supersedes the RSP. Supporting this contention, the Agreement provides that Lomas's entitlement to benefits thereunder would foreclose his right to receive benefits under any other severance plan. *Id.* at ¶ 10. In addition, the Agreement provides that it "shall remain in effect for the duration of the Employee's employment with the Company." *Id.* at ¶ 1. On the other hand, the RSP makes clear that Red Storm can unilaterally terminate the RSP at any time. RSP at § 8. Collectively, these provisions of the Agreement cast further doubt on the district court's conclusion that, as a contractual matter, the Agreement is part of the RSP. In addition, any ambiguity concerning whether the Agreement constitutes part of the RSP would probably be construed against Red Storm, as the Agreement's drafter. *See Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 89 (4th Cir. 1993). Thus, Red Storm

was not entitled to summary judgment based solely on the introductory paragraph of the Agreement.

Red Storm's contention that the Agreement cannot be read as separate and distinct from the RSP is likewise unpersuasive. The RSP, while available to all employees of Red Storm, does not purport to be the exclusive means through which those employees may receive severance benefits; indeed, our review of the RSP indicates that participation in it, and an employee's obligation to follow the internal grievance procedure provided therein, are triggered by the employee's decision to become a claimant.[5] Because the Agreement provides a distinct mechanism for triggering Red Storm's benefits obligation to Lomas (either termination by Red Storm or Lomas's written notice of resignation for "good reason"), it is not clear that the benefits provided for under the Agreement merely supplement those provided by the RSP. Indeed, as discussed above, if Lomas is entitled to benefits under the Agreement, he is foreclosed from accepting benefits under any other severance agreement, presumably including the RSP. Agreement at ¶ 10 ("[I]f the Employee is entitled to benefits under this Agreement, the Employee shall not be entitled to benefits under any other severance plan, policy, or arrangement of the Company or its affiliates."). In light of this foreclosure provision, the Agreement may well provide Lomas with a separate and independent basis for receiving severance benefits.

---

[5]In order for an employee to receive severance benefits under the RSP, he must first make a written claim with the Program Administrator. Only after such a claim is made is the employee obligated to follow the internal grievance procedure provided for in the RSP. More specifically, the RSP provides:

> A Participant . . . may make a claim for benefits under the Program by filing a written claim with the Program Administrator. . . . If a claimant is not satisfied with the decision of the Program Administrator . . . the claimant may appeal the decision of the Program Administrator by filing a written request with the Program Administrator.

RSP at § 7.

3.

Although the district court properly converted Red Storm's motion to dismiss into one for summary judgment, to consider "matters outside the pleading," the court failed to provide "all parties [a] reasonable opportunity to present all material made pertinent to such a motion," as required by Rule 12(b). Because of the apparent ambiguities in the RSP and in the Agreement, there is a genuine issue of material fact as to whether the Agreement is a part of the RSP and thus governed by ERISA. The Agreement is governed by North Carolina law and, under applicable North Carolina legal principles, where "the terms of a written contract or other instrument are susceptible of more than one interpretation, or an ambiguity arises, . . . parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of making the contract." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587 (1968) (internal quotation omitted). In this instance, parol evidence may well assist the parties and the court on the question of whether the Agreement was intended to be part of the RSP. As a result, the parties should be accorded an opportunity to conduct any relevant discovery, and they should be permitted to present to the court any materials pertinent to the issue.[6]

IV.

Pursuant to the foregoing, we vacate the Order granting summary judgment and we remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[6]In light of our disposition here, we need not consider whether resort to the internal grievance procedure of the RSP would have been futile.