**Felix VENEZUELA, Plaintiff,**

v.

**MASSIMO ZANETTI BEVERAGE USA, INC., Defendant.**

**Action No. 2:07CV402.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 21, 2007.

Glen M. Robertson, Esquire, Samuel W. Meekins, Jr., Esquire, Wolcott Rivers PC, Virginia Beach, VA, for Plaintiffs.

Anne G. Bibeau, Esquire, Arlene F. Klinedinst, Esquire, Vandeventer Black LLP, Norfolk, VA, for Defendants.

## *OPINION AND REMAND ORDER*

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on plaintiff's motion to remand. For the reasons stated below, plaintiff's motion to remand is **GRANTED.**

### I. Factual and Procedural History[1]

On December 5, 2005, plaintiff Felix Venezuela ("plaintiff") entered into an Executive Employment Agreement (the "Employment Agreement") with defendant Massimo Zanetti Beverage USA, Inc. ("defendant"). Pursuant to the Employment Agreement, plaintiff became the Vice–President of Operations for defendant. On July 13, 2007, plaintiff was terminated via a hand-delivered letter signed by defendant's Chief Operating Officer and Senior Vice President, John Boyle, and defendant's Chief Operating Officer and Chief Financial Officer, Larry Quier. The letter

---

**1.** On a motion to remand, because the burden to prove jurisdiction rests on the party opposing remand, the facts are stated in the light most favorable to the party seeking remand. *Booth v. Furlough, Inc.,* 995 F.Supp. 629, 630 (E.D.Va.1998); see *also Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Accordingly, the facts are presented herein in the light most favorable to the plaintiff.

did not specify any grounds for plaintiff's termination, and defendant has not subsequently provided plaintiff with any reason for his termination.

On August 6, 2007, plaintiff filed a complaint in the Circuit Court for the City of Portsmouth, Virginia. In his complaint, plaintiff alleges that defendant breached the Employment Agreement because defendant terminated plaintiff without Cause (as that term is defined in the Employment Agreement) and has refused to abide by the Employment Agreement. The Employment Agreement provides that, in the event of termination without Cause, plaintiff is entitled to two years' salary, bonus, and benefits. Plaintiff seeks damages in the amount of $700,000 for defendant's alleged breach of the Employment Agreement.

On September 6, 2007, defendant filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446, asserting that this court has original jurisdiction over this action under 28 U.S.C. § 1331, because plaintiff's complaint raises claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). On September 13, 2007, defendant filed an answer to plaintiff's complaint.[2]

On September 21, 2007, plaintiff filed a motion to remand this action to the Circuit Court for the City of Portsmouth, Virginia. In this motion, plaintiff also seeks an award of costs and attorney's fees. On October 2, 2007, defendant filed a response in opposition to plaintiff's motion to remand. Plaintiff replied on October 5, 2007. This matter is ripe for review.

## II. Analysis

■ In analyzing a motion to remand, significant federalism concerns require the court to construe the removal statute strictly against removal. E.g., Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir.1994). "If federal jurisdiction is doubtful, a remand is necessary." Id. The party seeking removal bears the burden of establishing federal jurisdiction. Id.

■ A defendant may only remove a state court action to federal court if it originally could have been filed in federal court. 28 U.S.C. § 1441. When the parties are not of diverse citizenship,[3] federal question jurisdiction is necessary in order for removal to be proper. 28 U.S.C. § 1331. The "well-pleaded complaint rule" governs the presence or absence of federal question jurisdiction. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This rule provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Gully v. First Nat'l Bank, 299 U.S. 109, 112–113, 57 S.Ct. 96, 81 L.Ed. 70 (1936). For a federal question to be present on the face of a well-pleaded complaint, either federal law must create the cause of action, or plain-

---

**2.** In its answer, defendant asserts two affirmative defenses: First, that this court lacks subject matter jurisdiction over plaintiff's purported Title VII claim because plaintiff failed to exhaust his administrative remedies under Title VII, and second, that this court lacks subject matter jurisdiction over plaintiff's claims for benefits because plaintiff failed to exhaust his administrative remedies as required by ERISA.

**3.** Plaintiff's complaint alleges that plaintiff is a resident of Virginia and defendant's principal place of business is in Suffolk, Virginia. In its answer, defendant admits to these allegations. Therefore, no diversity of citizenship exists between the parties. 28 U.S.C. § 1332(a), (c)(1).

tiff's right to relief must necessarily depend on the resolution of a substantial question of federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The result of this rule is that the plaintiff is the master of his claim, and may avoid federal jurisdiction by relying exclusively on state law. *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

■ There are two exceptions to the well-pleaded complaint rule. The first is the doctrine of "complete preemption." *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425. Complete preemption occurs when the Supreme Court determines that the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "[I] f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. 2841.

■ The second exception to the well-pleaded complaint rule is the doctrine of "artful pleading." Under this exception, "[a] plaintiff cannot avoid federal court simply by omitting to plead a necessary federal question in the complaint; in such a case the necessary federal question will be deemed to be alleged in the complaint."

15 James Wm. Moore et al., Moore's Federal Practice 1103.43 (3d ed.2006). It is within the framework set forth above that the court now addresses the parties' arguments.

### A. Plaintiff's Purported Title VII Claim

In its opposition to plaintiff's motion to remand, defendant argues that plaintiff cannot hide the fact that he has pled a retaliation claim under Title VII.[4] In support of this proposition, defendant points to the following portions of plaintiff's complaint:

6. In the latter part of June 2007, Defendant was informed that [plaintiff] was contemplating the filing of an EEOC Complaint against John Boyle ... and Larry Quier....

7. On July 13, 2007, Quier asked [plaintiff] to come to a meeting for the alleged purpose of deciding a severance agreement for the Director of Purchasing....

8. Contrary to the claimed purpose of the meeting, the sole real purpose was to terminate [plaintiff].

9. [Plaintiff] was terminated promptly upon arriving at the meeting....

10. At the meeting, [plaintiff] was handed a termination letter which was signed by Boyle and Quier.. and which did not specify any cause for termination.

(Compl.¶¶ 6–10.) Defendant claims that the "only conclusion to be drawn from [plaintiff's] inclusion of paragraph 6 is that he was fired because he threatened an EEOC complaint." (Def.'s Resp. to Pl.'s

---

4. 42 U.S.C. § 2000e–3(a) states that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Mot. to Remand 14.) The court, however, declines to draw this conclusion.

■ Nowhere in his complaint does plaintiff allege that he was fired in retaliation for contemplating filing a complaint with the Equal Opportunity Employment Commission (the "EEOC") against John Boyle and Larry Quier. Rather, plaintiff simply alleges that defendant terminated him without Cause and has refused to comply with those provisions of the Employment Agreement that address the event of termination without Cause.[5] Specifically, plaintiff asserts that he is owed Severance Benefits under the terms of the Employment Agreement.[6]

Whether or not the plaintiff *could* have brought a Title VII claim is irrelevant to the analysis of whether or not his complaint is removable. As the architect of his own lawsuit, "plaintiff is entitled to allege only nonfederal claims, even though he could have relied also on federal law." *Freeman v. Colonial Liquors, Inc.*, 502 F.Supp. 367, 369 (D.Md.1980); see *also Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425 ("[T]he plaintiff [is] the master of the

claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."). Defendant seizes on the fact that after the initiation of the present lawsuit, plaintiff filed a charge with the EEOC. (Def.'s Resp. to Pl.'s Mot. to Remand 15.) However, this decision by plaintiff does not convert his breach of contract action into one "arising under" Title VII for the purposes of federal jurisdiction. See *Pendergraph v. Crown Honda–Volvo, LLC*, 104 F.Supp.2d 586, 588 (M.D.N.C.1999) ("Plaintiff's preliminary filing with the EEOC did not constitute a binding election to proceed with his federal claims.... Through filing with the EEOC, plaintiff did not forfeit his right to pursue state and local remedies in state court.").

In their memoranda to the court on the issue of the removability of plaintiff's purported Title VII claim, both plaintiff and defendant focus on cases in which a plaintiff with a colorable Title VII claim elects not to pursue that claim in favor of a claim based on state or local antidiscrimination law. *E.g., Pendergraph*, 104 F.Supp.2d 586; *Ferrell v. Heck's, Inc.*, 604 F.Supp.

**5.** The Employment Agreement provides that if "the Company terminates the Executive without Cause ... as 'Cause' ... [is] defined in Section [ ] 2.04 ..., the Executive shall be paid Severance Benefits, as hereafter defined, in addition to all other amounts payable to the Executive as referenced in Section 2.05 or Section 2.06, as applicable." Employment Agreement ¶ 3.02.

**6.** The Employment Agreement provides a precise definition of "Severance Benefits," which are equal to the sum of:

(i) two times the Executive's annual base salary ... or, if greater, the annual base salary as in effect immediately prior to the Executive's termination of employment;
(ii) The greater of (a) the amount of any cash bonus which Executive would have otherwise received as set forth in Section 1.04.2, for the succeeding two (2) fiscal years following the year in which Executive

is terminated without diminution except as required by law, provided that any Company EBITDA performance goals are achieved for such years or, (b) for the same period if such EBITDA goals are not achieved, the average of the cash bonuses paid to the Executive for the two immediately preceding fiscal years, provided, such annual cash bonus amount shall not be less than seventy five percent (75%) of Executive's base salary on the date of termination; and
(iii) twenty-four (24) months of the Executive's then current benefits provided under Section 1.05, or the cash equivalent payment thereof (determined by a mutually agreed upon expert) including an additional payment to Executive to take into account any federal, state, local and other taxes and/or penalties that are attributable to any cash payment to Executive in lieu of providing Executive with the then current benefits under Section 1.05.
*Id.* ¶ 3.07.

683 (S.D.W.Va.1985). This focus is misplaced. The issue in the present breach of contract action is not whether plaintiff has now, or may have in the future, a valid claim based on federal, state, or local anti-discrimination law, as it has not been raised in this action. Rather, the issues in the case at bar are: (1) whether plaintiff was terminated for Cause, as the term is extensively defined in the Employment Agreement[7] and (2) whether the parties have abided by their post-termination obligations under the Employment Agreement.

Resolution of these issues does not depend on the resolution of substantial questions of federal law. *Atkinson v. Sellers,* 233 Fed.Appx. 268, 272–73 (4th Cir.2007) (unpublished) ("In this case, [plaintiff] could obtain relief on his breach of contract claim without reference to federal law at all, if the claim were litigated solely on the theory that Blue Cross breached the Settlement Agreement and that breach violated [state law]."); *see also Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir.2004) (*en banc*) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue.") (emphasis in original). In *Atkinson,* the plaintiff's complaint alleged breach of a settlement agreement. 233 Fed.Appx. at 271. Despite the fact that part of the underlying consideration for the settlement agreement was plaintiff's waiver of Title VII claims against defendant, the Fourth Circuit found that federal subject matter jurisdiction was lacking. *Id.* at 272–73.

The Fourth Circuit's reasoning in *Atkinson* applies with full force to this case:

> The jurisdictional grant embodied in Title VII states only that federal courts have jurisdiction over actions "brought under" Title VII. This case was brought under State contract law, not Title VII. *Because [plaintiff] neither alleges a violation of a federal statute nor raises a substantial question of federal law,* his complaint does not satisfy the requirements of subject-matter jurisdiction and must be dismissed.

*Id.* at 273 (quoting *Morris v. City of Hobart,* 39 F.3d 1105, 1111 (10th Cir.1994) (internal quotations omitted)) (emphasis added). Like the plaintiff in *Atkinson,* plaintiff here has alleged nothing more than a breach of contract claim. In accord with the federalism concerns demanding that the court construe the removal statute strictly against removal, *Mulcahey,* 29 F.3d at 151, the court declines to read a Title VII claim into plaintiff's complaint where none presently exists.[8]

### B. ERISA Preemption

The next question that the court considers is whether removal was proper because, as defendant contends, plaintiff's state law claim for "benefits" owed to him under the Employment Agreement is completely preempted by ERISA.

ERISA's preemptive force is vast. The statute makes clear that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This includes state common law actions that "relate to" an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux,* 481

---

7. Employment Agreement ¶ 2.04.

8. Because Title VII is not preemptive, removal based on preemption would also be improper. *E.g., Payman v. Bishop, No.* 2:03CV00048, 2003 WL 2002774, at *2 (W.D.Va. Apr. 30, 2003); *Frazier v. Colonial Williamsburg Found.,* 574 F.Supp. 318, 321 (E.D.Va.1983).

U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In determining whether a state common law action is preempted by ERISA, the question, therefore, becomes whether or not it "relates to" an employee benefit plan.

■ The Supreme Court explained that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines. Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). This standard has been interpreted to mean that state causes of action are preempted if they are actually ERISA claims in disguise. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir.2005) ("[W]hen a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption.").

### 1. Whether Plaintiff's Claim "Relates To" a Benefit Plan

■ Defendant argues that plaintiff's breach of contract claim "relates to" an employee benefit plan and is therefore preempted. This argument is unpersuasive. The Employment Agreement provides that if plaintiff is terminated without Cause, he is entitled to Severance Benefits. Employment Agreement ¶ 2.05. "Severance Benefits" include "twenty-four months of the Executive's then current benefits provided under Section 1.05, or the cash equivalent payment thereof. . . ." *Id.* ¶ 3.07.[9] Section 1.05 of the Employment Agreement refers to a schedule of benefits attached to the Employment Agreement as Exhibit A. *Id.* ¶ 1.05. Exhibit A then lists sixteen items which comprise plaintiff's benefits under the Employment Agreement.[10]

Some of the benefits for which plaintiff seeks to recover damages under the termination provision of the Employment Agreement (and its incorporation of the benefits and perquisites listed in Exhibit A) mention an employee benefit plan,[11] and many others do not.[12] However, the fact that the Employment Agreement "mentions" various benefits available to plaintiff does not automatically mean that it "relates to" an employee benefit plan as that term is used in the context of ERISA preemption. If that were the case, ERISA would preempt nearly every state common law employment claim. Although ERISA's preemptive force is mighty, the court declines to read ERISA as so doing. *See Schultz v. Nat'l Coal. of Hispanic Mental Health and Human Servs. Orgs.*, 678 F.Supp. 936, 938 (D.D.C.1988) ("[T]he

9. *See supra* note 6 and *infra* note 10.

10. These benefits include: participation in defendant's qualified retirement plans, participation in a nonqualified deferred compensation plan, health and medical insurance at no cost, flexible spending accounts, vacation time, life insurance, and various perquisites such as an automobile allowance, recreational and travel club memberships, professional services, and a tax gross up provision. Employment Agreement Exhibit A.

11. For instance, one of plaintiff's benefits consists of participation in defendant's qualified retirement plan, including any 401(k) plan. Employment Agreement Exhibit A 11.

12. Plaintiff's entitlement to "at least two Airline Club memberships per year" under the terms of the Employment Agreement can hardly be read as making reference to an employee benefit plan. Employment Agreement Exhibit A ¶ 11.

cases stressing the broad reach of the ERISA preemption clause also stress that common sense should not be left at the courthouse door.... It is ... difficult to conceive that Congress intended to emasculate state labor law....").

Plaintiff's breach of contract claim cannot fairly be characterized as an "alternative means of recovering benefits allegedly due under ERISA," and is therefore not preempted. *Gresham*, 404 F.3d at 258. The following illustration reinforces this conclusion: If plaintiff were to sue the administrator of defendant's 401(k) plan, or the administrator of defendant's medical benefits plan, for the benefits allegedly due under the Employment Agreement, the plan administrator would be required to interpret the Employment Agreement, not the plan documents themselves, in order to determine plaintiff's eligibility for any benefits. Therefore, ERISA's civil enforcement provisions are simply inapplicable to the present dispute,[13]

Plaintiff's lawsuit centers around the facts surrounding his termination and a proper interpretation of the Employment Agreement under state contract law. Once the dispute over plaintiff's termination is resolved, any role of a plan administrator becomes nearly de *minimis*. If plaintiff prevails in his claim, he would be entitled to damages from defendant's breach of the Employment Agreement— While the calculation of these damages may require one to consult the ERISA plan documents for valuation purposes, "the [plans themselves] would not be liable and the administrators of the [plans] would not be burdened in any way." *Pizlo v.*

*Bethlehem Steel Corp.*, 884 F.2d 116, 120–21 (4th Cir.1989); *see also Schultz*, 678 F.Supp. at 938 ("Not a single case offers a shred of support for the proposition that a back-pay claim involving valuation of employee fringe benefits creates a ground for ERISA preemption.").

Plaintiff's relief does not depend on the resolution of any question involving an interpretation of ERISA; it simply depends on a determination of whether the Employment Agreement has been breached. *Grover v. Comdial Corp.*, No. Civ. A. 3:01cv00035, 2002 WL 1066951, at *4 (W.D.Va. May 23, 2002) ("[T]he plaintiff is disputing his termination for cause, one of the consequences of which was the subsequent denial of benefits. The claim implicates the employee-employer relationship, and not the employer's obligations vis-a-vis the benefit plans."). Plaintiff's claim cannot be recast as a means to recover benefits allegedly due under a plan, and therefore does not "relate to" an employee benefit plan under a proper reading of ERISA. *Gresham*, 404 F.3d at 258.

### 2. Whether the Employment Agreement *Itself* is an "Employee Benefit Plan"

 Defendant correctly argues that a benefit plan can consist of one employee. *See Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 297–98 (4th Cir.1993). However, defendant's attempts to characterize the Employment Agreement itself as an "employee benefit plan" are misguided. "Not all severance pay arrangements fall within the ambit of ERISA, and to create an ERISA

---

**13.** It would be a different case if plaintiff were asking for benefits *qua* benefits:

> [P]reemption and removal would be proper if plaintiff had claimed improper processing of benefits, or that defendant[ ] terminated [plaintiff's] employment in order to avoid providing [him] with ERISA-covered bene-

fits, to keep [his] benefits from vesting, or for some other reason whose impropriety is directly connected to the ERISA-covered plan. ERISA would preempt plaintiff's claims had [he] asked for benefits *per se*. *Schultz*, 678 F.Supp. at 938.

obligation on the part of the employer, the plan must otherwise meet the definitional elements of an employee welfare plan." *Mazer v. Safeway, Inc.*, 398 F.Supp.2d 412, 418 (D.Md.2005). Therefore, "a commitment on the part of an employer to maintain benefits for an employee after [he] has stopped working for the company may often be properly characterized as a simple contract between an employee and employer." *Plante v. Foster Klima & Co.*, No. 03–3553 (RHK/FLN), 2004 WL 2222318, at *4 (D.Minn. Sept.30, 2004) (internal quotations omitted).

ERISA applies to employee benefit plans, not simply to employee *benefits*. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In determining whether or not a specific program constitutes an ERISA "plan," a court's inquiry focuses on whether or not the program at issue involves an "ongoing administrative scheme." *E.g.*, *Mazer*, 398 F.Supp.2d at 419 (citing *Fort Halifax*, 482 U.S. at 8, 11–12, 107 S.Ct. 2211). Because the Fourth Circuit has not explicitly developed an analytical framework for determining whether a program requires an administrative scheme, the court looks to the framework developed in other jurisdictions. *Donovan v. Branch Banking and Trust Co.*, 220 F.Supp.2d 560, 564 (S.D.W.Va.2002). This framework consists of a fact-specific inquiry, one which essentially focuses the "administrative scheme" inquiry on the amount of employer discretion allowed under the contract or statute at issue. *See Lomas v. Red Storm Entm't*, 49 Fed.Appx. 396, 400–

01 (4th Cir.2002) (unpublished); *Blair v. Young Phillips Corp.*, 158 F.Supp.2d 654, 659 (M.D.N.C.2001).

The Employment Agreement calls for a lump sum determination of plaintiff's Severance Benefits. *See supra* note 6 (listing Severance Benefits).[14] The Employment Agreement's inclusion of detailed formulae for use in calculating these benefits obviates any meaningful discretion on the part of defendant. *See Kulinski v, Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 258 (8th Cir.1994). Nothing in the Employment Agreement indicates that a special fund was created in the event that defendant would become obligated to plaintiff under the termination provisions of the Employment Agreement. Presumably, any payments made to plaintiff as severance would be paid out of defendant's general fund. *See Emery v. Bay Capital Corp.*, 354 F.Supp.2d 589, 594 (D.Md.2005) ("Simply continuing to pay Plaintiffs [sic] salary for six months after his termination, presumably out of Defendant's general fund, does not require the establishment of a separate, ongoing administrative scheme to administer these severance benefits."). Furthermore, the continuation of plaintiff's current health and fringe benefits under the terms of the Employment Agreement does not create a new administrative scheme, and therefore does not transform the Employment Agreement into an ERISA plan. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538–39 (3d Cir.1992); *Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962–63 (5th Cir.1992); *Plante*, 2004 WL 2222318, at *5.

14. It is not clear whether the Severance Benefits are actually to be *paid* in a lump sum or "in accordance with [defendant's] standard pay schedule." Employment Agreement ¶ 3.06. Paragraph 3.07 precisely defines Severance Benefits, but does not speak to the manner and timing of payment. Paragraph 3.06 of the Employment Agreement appears to indicate that Severance Benefits are to be paid consistent with defendant's current payroll policies. In any event, the payment of Severance Benefits in accordance with defendant's current payroll policies does not implicate an ongoing administrative scheme. *E.g., Mazer*, 398 F.Supp.2d at 420–21.

A minimal amount of discretion on the part of defendant does not turn this Employment Agreement into an ERISA plan. *E.g., Velarde v. PACE Membership Warehouse, Inc.,* 105 F.3d 1313, 1317 (9th Cir. 1997); *Mazer,* 398 F.Supp.2d at 421; *Donovan,* 220 F.Supp.2d at 566–67. The Employment Agreement is largely self-executing. It specifies a complete set of possible ways that plaintiff's employment with defendant might end, including Incapacity, Retirement, Death, Termination For Cause (which is precisely defined as any one of four scenarios), Termination Without Cause, and Executive Termination For Good Reason (which is precisely defined as any one of five scenarios). Employment Agreement art. II. Article III of the Employment Agreement then goes on to specify in great detail the various benefits that plaintiff would be entitled to under all of the termination possibilities. Id. art. III. The only amount of discretion required to effectuate this Employment Agreement is a determination of which of the six possible reasons listed in Article II is the basis for plaintiff's termination.[15] *See Lomas,* 49 Fed.Appx. at 400 ("[The employer was left] with no discretion to determine either (a) whether [plaintiff] was entitled to severance benefits, or (b) the amount of benefits he was to receive.... Therefore, the Agreement ... does not appear to be an employee benefit plan as defined by ERISA."); *Emery,* 354 F.Supp.2d at 595 ("[A]n ongoing administrative scheme is not required simply because there is the need to resolve whether a termination was 'for cause.' "); *Donovan,* 220 F.Supp.2d at 568 (" '[C]ause' is specifically and narrowly defined, rather than entirely a matter of BB & T's discretion ... the [agreement] removes all discretion from BB & T as to the amount of benefits."). This relatively ministerial task does not transform the Employment Agreement into an ERISA plan.

In *Delaye v. Agripac, Inc.,* 39 F.3d 235 (9th Cir.1994), a case involving a dispute about an employment contract that was nearly identical to the Employment Agreement in this case, the Ninth Circuit found that no ongoing administrative scheme was implicated. *Id.* at 237. In *Delaye,* the executive employment contract at issue provided that if plaintiff were terminated for cause, he would receive only his base yearly salary. *Id.* at 236. If the executive in Delaye were terminated without cause, until he found other employment, he would receive the following: a fixed monthly amount for twelve to twenty-four months according to a set formula; accrued vacation benefits; and the same accident, health, life, and disability insurance he had during the term of employment. *Id.* The reasoning employed by the Ninth Circuit in holding that the employment contract did not constitute an ERISA plan applies with full force to the Employment Agreement presently before this court:

> Once Agripac decided to terminate Delaye, the severance calculation became one akin to that in *Fort Halifax*—a straightforward computation of a one-time obligation. The obligation was either to pay Delaye his regular salary prorated to the date of his termination, if he was terminated for cause; or pay him a fixed monthly amount for twelve to twenty-four months according to a set

---

**15.** Plaintiff's termination is itself an event that may never materialize. *Cf. Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211 ("[T]he employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits.... The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.") (emphasis in original).

formula, plus accrued vacation pay and insurance benefits, if he was terminated without cause. While payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment. Sending Delaye, a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the employment contract does not rise to the level of an ongoing administrative scheme.

*Id.* at 237; *see also Donovan*, 220 F.Supp.2d at 565–66 (finding, in a case involving an executive employment agreement similar to the one at issue in this dispute, that "a lump-sum payment plus a year of pre-existing benefits ... does not require the creation of a new administrative scheme" and therefore does not constitute an employee benefit plan). The situation facing this court is indistinguishable from that in *Delaye*, and the court finds the Ninth Circuit's reasoning in that case persuasive.

Finally, the court notes that "careful scrutiny must be given to a [purported] plan involving a single beneficiary." *Emery*, 354 F.Supp.2d at 596. The Employment Agreement at issue in this matter applies only to plaintiff, and appears to have been specifically negotiated between plaintiff and defendant.[16] When it comes to ERISA preemption, line drawing is inevitable, as there must be some logical limit to the preemptive scope of ERISA. *See id.; Donovan*, 220 F.Supp.2d at 568. The court is unwilling to find that this straightforward employment contract between plaintiff and defendant is preempted by ERISA.[17]

### III. Conclusion

For the reasons stated above, the court finds that subject matter jurisdiction is lacking in this case. Accordingly, the court **REMANDS** plaintiff's case to the Circuit Court for the City of Portsmouth, Virginia for all further proceedings. The Clerk is **DIRECTED** to send a copy of this Opinion and Remand Order to counsel for plaintiff and defendant, and to the Circuit Court for the City of Portsmouth. Further, the Clerk shall take the necessary steps to effect the remand to state court.

**IT IS SO ORDERED.**

---

**16.** For instance, the Employment Agreement states that plaintiff is to receive health and medical benefits "comparable to [the] Sara Lee Corporation's health/medical insurance benefits," and is eligible to participate in a nonqualified deferred compensation plan "which replaces the employer contributions to the Sara Lee Corporation's Deferred Compensation Plan ... which were previously available to Executive." Employment Agreement Exhibit A ¶¶ 2–3. An Internet search revealed that plaintiff was previously employed by the Sara Lee Corporation, which lends itself to the conclusion that the Employment Agreement is far from a form employment agreement. Rather, each item of the Employment Agreement appears to have been agreed upon through actual negotiation between plaintiff and defendant. *Cf. Gresham,* 404 F.3d at 259 n. 5 ("We note additionally that a holding that a breach of contract claim is preempted by ERISA whenever the plaintiff claims an independent promise to pay benefits of the same type as benefits also provided by an ERISA-governed plan would limit employers' ability to lure desirable employees by offering benefits better than those available to the rank-and-file.").

**17.** Defendant basis for removal was objectively reasonable. Therefore plaintiff's motion for attorney's fees and costs is **DENIED.** *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).