**Mark ROBBINS, Plaintiff,**

v.

**FRIEDMAN AGENCY, INCORPORATED, Defendant.**

**Civil Action No. 2:09cv628.**

United States District Court, E.D. Virginia, Norfolk Division.

May 11, 2010.

---

Alexander Taylor Mayo, Jr., Scott Joseph Flax, Tavss Fletcher P.C., Norfolk, VA, for Plaintiff.

Christian Lee Connell, Norfolk, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. This matter has been fully briefed and is ripe for judicial determination.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Mark Robbins was employed as an insurance agent by Defendant Friedman Agency, Inc. starting in 1997 until he was terminated on January 28, 2009. On January 23, 2008, Plaintiff entered into an Employment Agreement with Defendant. Paragraph 3(c) of the "Compensation" section of the Employment Agreement states:

c. *PAYMENT UPON RETIREMENT, DISABILITY OR DEATH DURING TERM OF EMPLOYMENT*—If Employee, after having been employed by Friedman Associates for a minimum of 5 years and assuming he is not in breach of any term hereof or the other condition of employment, retires, is determined to be totally disabled as defined herein, or dies (hereinafter referred to as "Event") during the period of employment, then upon the occurrence of any such Event, Employee, or his estate if he dies, shall be paid a sum equal to one times the annual renewal stream anticipated based upon Employee's book of business on the date immediately proceeding [sic] the applicable Event, said sum shall be calculated and conclusively determined by Friedman Associates. The sum provided herein shall be paid in monthly installments over a 10–year period, without interest, beginning in the month following the applicable Event. For the purposes of this subparagraph, an employee is eligible to retire only after having reached the age of 60 or olds [sic], and total disability shall mean that Employee is no longer able to do his work, cannot adjust to other worth [sic] because of his medical (physical or mental) condition, and his disability must last or be expected to last for a least one year or to result in death. The determination of total disability as defined above must be made in writing by a medical doctor or otherwise to Friedman Associates' satisfaction.

Compl. Exh. 1 at 3–4.

On December 29, 2009, Plaintiff filed a complaint in this Court alleging that Defendant had violated 29 U.S.C. § 1140 of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (hereinafter "ERISA"). On January 28, 2010, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This matter has been fully briefed and is ripe for judicial determination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

## III. DISCUSSION

■ At issue in this case is whether paragraph 3(c) of the Employment Agreement constitutes an "employee pension plan" governed by ERISA. ERISA applies to "any employee benefit plan established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). "ERISA, like the Civil Rights Acts of 1871 and 1964, and the Labor-Management Reporting and Disclosure Act, is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984). In order to find that the Employment Agreement in this case is an employee benefit plan, the Court must find that it is a plan, fund, or program established or maintained by an employer for the purpose of providing either, or both, employee welfare benefits and employee pension benefits to employees. *See* 29 U.S.C. § 1002(1) and 1002(2)(A). In this case, Plaintiff is alleging denial of his retirement benefits, though the agreement references both death benefits and retirement income. An employee pension benefit plan "(i) provides retirement income to employees, or (ii) results in deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A).

■ A plan, fund or program is established if a reasonable person is able to ascertain "the existence of intended benefits, intended beneficiaries, a source of financing, and procedures for receiving benefits." *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982); *Guiragoss v. Khoury,* 444 F.Supp.2d 649, 655 (E.D.Va. 2006). Whether a plan is established by an individual agreement is irrelevant to the analysis. *Guiragoss,* 444 F.Supp.2d at 656. ERISA employee pension plans are defined broadly; a plan may qualify under ERISA where there is a single agreement or even where the plan lacks a formal written document. *See Biggers v. Wittek Indus. Inc.,* 4 F.3d 291, 298 (4th Cir.1993); *Dillingham,* 688 F.2d at 1373.

Plaintiff easily satisfies the first three factors of *Dillingham.* The Employment

Agreement clearly states the intended benefits (one times the annual renewal stream anticipated based upon Employee's book of business on the date immediately preceding the applicable Event) and the class of intended beneficiaries (Plaintiff and any other Employees so situated).[1] Compl. Exh. 1 at 3. Where no exact source of financing is specified on the face of the plan, as here, courts "have routinely held it may be assumed that benefits are to be paid out of the general assets of the employer." *Hughes v. White,* 467 F.Supp.2d 791, 801 (S.D.Ohio 2006), *aff'd sub nom., Hughes v. Zurz,* 298 Fed.Appx. 404 (6th Cir.2008).

The remaining inquiry is whether the terms of the Employment Agreement satisfy the requirement that a reasonable person could determine the procedures for receiving benefits. Defendant argues at length about whether the Employment Agreement constitutes an "ongoing administrative scheme," as was required for severance benefits to qualify as an ERISA plan in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11–12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).[2] However, that case is inapposite here, where there is no dispute over severance benefits. Instead, *Dillingham* remains the proper test, as it incorporates the "ongoing administrative scheme" requirement of *Fort Halifax* in its requirement of procedures for receiving benefits. *See Hughes v. White,* 467 F.Supp.2d 791, 805 (S.D.Ohio 2006); *Williams v. WCI*

*Steel Co., Inc.,* 170 F.3d 598, 604 (6th Cir.1999). Under this scheme, the basic procedure for receiving benefits satisfies part of the fourth prong of *Dillingham,* as the series of payments are automatically triggered by the applicable event. *See Kolkowski v. Goodrich Co.,* 448 F.3d 843 (6th Cir.2006) (finding *Dillingham* factor satisfied by automatic receipt after termination). However, this requirement also encompasses the need for an ERISA plan beyond a mere benefit.

■ The United States Court of Appeals for the Fourth Circuit has not provided controlling precedent on interpreting the last factor of *Dillingham.* In the severance context, several circuits have developed tests to determine whether an "ongoing administrative scheme" exists. Though as discussed below, a different set of principles operates when considering retirement benefits than the typical severance package, these multi-factor tests are nonetheless instructive when considering what constitutes a "plan" rather than a one-time benefit. The United States Court of Appeals for the Eighth Circuit considers (1) whether the payment is a one-time lump sum or a continuous series; (2) whether the employer undertook any long-term obligation for the payments; (3) whether the severance payments are due upon the occurrence of a single, unique event; and (4) whether the severance arrangement requires the employer to engage in a case-by-case review of employ-

---

1. Defendant argues that this Plan is a one-person plan, in contrast to "Plaintiff's naked assertion in his Memorandum." (Def. Reply at 2). However, Plaintiff's Complaint ¶¶ 12–13 alleges a class of intended beneficiaries and that Plaintiff was a participant in the plan. Furthermore, both *Biggers* and *Cvelbar v. CBI Illinois Inc.,* 106 F.3d 1368, 1376 (7th Cir.1997) have held that a one-person agreement may qualify as an ERISA plan. *See Biggers,* 4 F.3d at 298 (finding "Neither the definition of 'employee welfare benefit plan'

nor 'employee benefit' includes any suggestion that the number of employees covered is a limiting factor").

2. In keeping with the broad applicability of ERISA, the Supreme Court noted in *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 130 n. 2, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) that the requirement of an "administrative" scheme was "minimal."

ees. *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 934–35 (8th Cir.1999); *see also Emery v. Bay Capital Corp.*, 354 F.Supp.2d 589, 593 (D.Md.2005). The inquiry into whether a severance agreement qualifies as an ERISA plan is fact-specific, and as such, no one factor is determinative. *Donovan v. Branch Banking and Trust Co.*, 220 F.Supp.2d 560 (S.D.W.Va. 2002); *Emery*, 354 F.Supp.2d at 593.

The United States Court of Appeals for the Eleventh Circuit considered a similar but more informal procedure than the one at issue in this case in *Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991). There, the Court found "[t]he situation in Fort Halifax is easily distinguishable from the instant case which does involve a continuing obligation necessitating ongoing, though simple, procedures. The letter of October 23, 1981 expressly provides that the company 'will issue you a check ... each month ... until your death or when you have no use for [the benefits].'" *Id.* at 1544–45. The facts in *Williams* are even less supportive of an ERISA plan than here, as there was merely a letter between the owner of the company and a single employee; additionally, there was no discretion involved to determine the employee's eligibility or particular circumstances.

Here, the Employment Agreement provides that the sum "equal to one times the annual renewal stream anticipated based upon Employee's book of business on the date immediately proceeding the applicable Event ... shall be paid in monthly installments over a 10–year period, without interest, beginning in the month following the applicable Event." Furthermore, "said sum shall be calculated and conclusively determined by Friedman Associates." As opposed to those severance cases that involve a single, lump-sum payment, or a short-term series of payments, Defendant here "assumes ... responsibili-

ty to pay benefits on a regular basis, and thus faces ... periodic demands on its assets that create a need for financial coordination and control." *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir.2002) (citing *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. 2211). Defendant retained discretion to determine the value of the renewal stream based on Plaintiff's book of business, unlike the mechanical calculations at issue in *Kulinski v. Medtronic Bio–Medicus Inc.*, 21 F.3d 254, 258 (8th Cir.1994) or other agreements where the payment is calculated by a formula involving the term of service. *See, e.g., Donovan*, 220 F.Supp.2d at 565–66. These ongoing payments would only occur in the event of a specific triggering event, namely, his retirement, death, or total disability after having been employed by Defendant for five years or more.

Defendant cites numerous cases addressing severance agreements where courts found insufficient evidence of a plan as proof that this agreement also does not satisfy the requirements of a plan. Despite the general usefulness of the *Fort v. Coyne* administrative scheme in evaluating whether an agreement qualifies as a plan even outside the severance context, there are important distinctions between the nature of a severance agreement and as here, retirement, death, and disability benefits. In a footnote to *Fort v. Coyne*, the Supreme Court addresses the Appellant's argument in the case as to why a one-time payment in the form of a death benefit qualifies as an ERISA plan but a one-time payment for severance in a statutory scheme does not. The Supreme Court explains:

> While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis.

The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis. This is borne out by the fact that death benefits are included in appellant's retirement plan, with instructions on how eligibility is to be determined, benefit levels calculated, and disbursements made.

482 U.S. at 14 n. 9, 107 S.Ct. 2211. This was not a contract written to induce an employee to take a specific offer; Defendant had to prepare for the possibility that Plaintiff and other similarly situated employees may have died, become disabled, or retired at any given time, and would be liable for monthly payments for 10 years past that point. Unlike severance or the bankruptcy analogy put forth in *Fort v. Coyne,* retirement, death, and disability are not unique events, but predictable and ongoing obligations to employees that ERISA is designed to protect. Plaintiff's agreement in this case almost precisely mirrors the death benefit in the *Fort v. Coyne* appellant's retirement plan, with instructions on eligibility, benefit levels, and disbursements.

Unlike many of the cases Defendant cites, Paragraph 3(c) of Plaintiff's Employment Agreement was not conditioned on Plaintiff's continuing services; it was not a buy-out that required a non-compete; and there were no express terms that this was not a benefit plan. Under Defendant's argument for ERISA qualifications, a plan must be for the benefit of multiple employees, funded by contributions by employees, have fiduciaries to manage the assets, set up procedures for its amendment, and hold the assets in trust. This argument, however, conflates the statutory requirements for maintenance of ERISA accounts with the intentionally broad requirements for what qualifies as an ERISA plan. *Dillingham* cautions:

> Furthermore, because the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan ... it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards.

688 F.2d at 1372. *See also Elmore v. Cone Mills Corp.,* 23 F.3d 855, 861 (4th Cir.1994) ("An informal plan may exist independent of, and in addition to, a formal plan as long as the informal plan meets all of the elements outlined in *Donovan* "); *Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206, 209 (3rd Cir.1992) (finding ERISA does not require a written document); *Modzelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1377 (9th Cir.1994) (finding virtually any contract providing for deferred compensation establishing a de facto pension plan under the broad applicability of ERISA); S. Rep. No. 93–127 (1973), *reprinted in,* 1974 U.S. Code Cong. & Admin. News 4639, 4854 ("It is intended that coverage under [ERISA] be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs").

Under the terms of the Employment Agreement, a reasonable person could easily ascertain the benefits, who would receive the benefits, how the benefits would be financed, and the procedure for dispersing the benefits. ERISA does not mandate intricacy but only the satisfaction of these criteria. In conclusion, the Employ-

ment Agreement between Plaintiff and Defendant is an employee pension plan governed by ERISA and consequently, Plaintiff has stated a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Failure to State a Claim is **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**